478 So.2d 1155 (1985)
Fernando MARRERO, Appellant,
v.
The STATE of Florida, Appellee.
No. 84-2406.
District Court of Appeal of Florida, Third District.
November 26, 1985.
Bennett H. Brummer, Public Defender and Howard K. Blumberg, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Richard L. Polin, Asst. Atty. Gen., for appellee.
Before BARKDULL, NESBITT and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The law of evidence provides  as it always has  that a party may attack the credibility of a witness called by his adversary by introducing statements of the witness which are inconsistent with the witness's *1156 present testimony. See § 90.608(1)(a), Fla. Stat. (1983). The law of evidence does not provide  and never has  that a party may attack the credibility of a witness simply by insinuating through his questions to the witness that the witness in fact has made statements which are inconsistent with the witness's present testimony, and then treating the insinuating questions as if they were impeaching evidence. Because the prosecutor in the present case equated his insinuations with proof and  in our view, to the defendant's undoubted harm  argued them to the jury as if they were evidence, we reverse the defendant's convictions and remand the case for a new trial.
The defendant was tried for manslaughter and carrying a concealed firearm. The victim, a man named Frank Villa-Perez, claimed that the defendant took several hundred dollars from Villa-Perez's apartment. The confrontation between the victim and the defendant was witnessed by four people. While all four agreed that they had heard Villa-Perez threaten to kill the defendant if he did not return the missing money, the three witnesses who testified for the State stated that Villa-Perez threatened to kill the defendant if he did not return the money by the following day. The fourth witness, Maria Rodriguez, called by the defense, testified that Villa-Perez's threat was more immediate  he told the defendant, "You have to give me the money now or I will kill you right here, now." Rodriguez, unlike her co-observers, testified that she saw Villa-Perez, indisputably a much larger man than the defendant, punch the defendant in the chest area three times and hit him in the face once while pursuing the defendant, backing him down the street. The defendant told the police that, believing Villa-Perez had a gun and was reaching for it, he shot Villa-Perez in self-defense when Villa-Perez lunged at him. Rodriguez too had seen Villa-Perez go for his pocket.
Suffice it to say that, apart from the defendant's statement to the police, only Rodriguez's testimony supported the defendant's claim of self-defense. The believability of Rodriguez was critical to the defendant's case.
As noted, Rodriguez testified that Villa-Perez punched the defendant with a clenched fist in the chest area three times and hit him with a hand in the face once. On recross-examination, the prosecutor asked:
"[Prosecutor]: ... Do you remember [being in my office] just a few days ago on Monday?
"[Witness]: Yes.
"[Prosecutor]: Do you remember telling me, at that time, that Frank punched the defendant in the face three times?
"[Witness]: No.
"[Prosecutor]: So, if I wrote down in my notes ...."
At this point the defense attorney objected and, outside of the jury's presence, moved for a mistrial:
"[Defense Attorney]: That's totally improper and [the prosecutor] knows it's totally improper.
"He cannot impeach someone from a piece of paper that he wrote in his office. He knows it's improper and he did it deliberately, even after I made an objection, he continued with it in front of the jury.[1]

*1157 "There is no curative you can give for that.
"[Prosecutor]: Judge, all I did, I asked  I gave her an opportunity to say whether or not I was mistaken if I wrote that down because that's exactly what she told me and I wrote it down.
"I asked her three or four times. I am giving her an opportunity before she is impeached.
"THE COURT: He has got your witness on recross. I will deny the motion for mistrial. Let's go on.
"[Prosecutor]: You did not tell me on Monday that the victim punched the defendant three times in the face?
"[Witness]: No. He gave him three punches here and in the face only with the hand.
"[Prosecutor]: Okay. Thank you."
With that, the witness was excused, the defense rested, and the court invited the prosecution to put on its rebuttal case. None was forthcoming. Despite the witness's unequivocal denial that she had told the prosecutor that the victim punched the defendant in the face three times, no proof was presented that the witness had indeed made such a statement in the prosecutor's office.
It is unclear whether the statement purportedly made by Rodriguez in the prosecutor's office was witnessed by persons other than the prosecutor. The transcript of the trial suggests that a translator, a detective, and Rodriguez's sister were in the office at some times when Rodriguez was there. If the prosecutor alone witnessed Rodriguez's statement  or if only the prosecutor, through his notes, remembered it  then quite obviously he would have to confront the ethical problems presented by his need to testify in the case. See Williams v. State, 472 So.2d 1350 (Fla. 2d DCA 1985) (where attorney must testify to avoid a miscarriage of justice, remedy is to exclude attorney as a lawyer, not as a witness). While the prosecutor, by not testifying to the impeaching statement, may have successfully avoided the ethical problem of being an advocate and witness in the same case, he most certainly did not avoid the ethical problem created when, being obviously unprepared or unwilling to prove up the impeaching statements, he nonetheless asked Rodriguez the predicate and insinuating questions.
It is said, of course, that the predicate questions to impeachment must be asked in good faith, that is, with the intent and ability to later prove (if it is not admitted) that the witness gave some statement inconsistent with his or her present testimony. The reason that such proof must be forthcoming is because the predicate question  e.g., "Didn't you tell me ...?" or "Didn't you say to so-and-so"  is itself testimonial, that is, the question suggests that there is a witness who can testify that such a statement was made. When this suggested witness is not actually called to give the impeaching testimony under oath, all that remains before the jury is the suggestion  from the question  that the statement was made. When that occurs, the conclusion that must be drawn is that the question was not asked in good faith, and that the attorney's purpose was to bring before the jury inadmissible and unsworn evidence in the form of his questions to a witness.
It thus appears that an objection and a motion for mistrial made at the time the predicate question is asked is premature[2]: If the impeaching evidence is later produced, the harm of the question is cured[3]; but if the impeaching evidence is *1158 not produced, then, retroactively, the question is objectionable, and if prejudicial enough, mistrial is warranted. It follows, then, that a motion to strike the question and instruct the jury should be made when the State has concluded its case without producing any impeaching evidence, or if striking and a curative instruction will not cure the harm, a motion for mistrial should be made at that time. Thus, in the present case, while no error was committed in overruling the premature objection and denying the motion for mistrial, it was error to deny the defendant's renewed motion for mistrial made when the prosecutor rested without putting on impeachment evidence in rebuttal.
If there was ever any chance that the insinuation of the prosecutor's questions would be lost on the jury, the prosecutor was soon to make sure it was not. In his summation, his insinuating questions were argued as evidence, as if, magically, impeachment had really occurred:
"They get back to the station. They give the defendant all the time in the world. Tell us about it. Well, the victim punched me. He hit me. He held his fist like this, just like a punch. And Detective Soto said, wait a minute. I don't see any marks on your face if he punched you. He is much bigger than you. Then the defendant says, well, you're right. Maybe he pushed me. He is changing the story. He is conforming his story as he is going along trying to make his case better, just like Mrs. Rodriguez did. Because on Monday, they said he was punched three times in the face. Today, they say in the chest. Why? Because during Monday and Tuesday, the photographs show he has none. The defense claims what a big guy this is. You know very well if he punched him in the face, you will see some marks.
"Now, she comes in and 
"[Defense Counsel]: Objection.
"THE COURT: The jury will recall the evidence.
"[Prosecutor]:  when they told me today he was punched in the chest." (emphasis added).
The prosecutor's argument not only exacerbated the error, but demonstrated the harm. He informed the jury that Mrs. Rodriguez changed her testimony from the victim hitting the defendant in the face three times to the victim hitting the defendant in the chest three times because, after visiting the prosecutor's office on Monday where she told her initial story, she learned that the defendant's face was not bruised. And he urged the jury to conclude from that that Mrs. Rodriguez changed these initially insignificant facts to conform her story to other facts and thus help the defendant and that, therefore, her testimony should be rejected in its entirety. Since it appears to us that the wholesale rejection of Mrs. Rodriguez's testimony would severely undermine the defense and likely affect the outcome of the trial, we reverse the convictions and remand for a new trial.
Reversed and remanded.
NOTES
[1] Since the transcript does not reflect any further utterances by the prosecutor following defense counsel's objection, we take this reference to mean that the "piece of paper"  although not necessarily the words thereon  on which the prosecutor purportedly recorded his conversation with the witness  or at least some piece of paper  was being displayed to the jury with the hope that the jury would invest the piece of paper with probative value. It is clear that notes made by the prosecutor which were not approved or adopted by the witness could not be used to impeach the witness, and thus could not be shown to the witness as a predicate for impeachment. See Whitaker v. Blackburn, 74 So.2d 794 (Fla. 1954), and cases cited therein. And it is just as clear that a prosecutor's notes, even if a hearsay objection could be overcome, but see People v. Rodgers, 388 Mich. 513, 201 N.W.2d 621 (1972) (adopting People v. Rodgers, 36 Mich. App. 211, 220, 193 N.W.2d 412, 415 (1971) (Levin, J., dissenting)), are hardly self-authenticating. "The rules of evidence concerning the proof of facts do not evaporate upon utterance of the magic word `impeachment.'" 193 N.W.2d at 418.
[2] Defense counsel may, of course, object provisionally, thus notifying the prosecutor and the court that the question is proper only if the prosecutor produces a witness to the impeaching statement. Such a provisional objection, however, is not required.
[3] The question, "Didn't you tell me?", posed to a witness is, in effect, unsworn testimony of the prosecutor  the attorney proceeding under the mantle of the State. Where someone other than the prosecutor is called to impeach the witness's denial of the statement, in theory, the jury chooses between the testimony of the witness and the impeaching witness as to whether the statement was made. There exists in this process a risk that the prosecutor's testimonial question, which, of course, is consistent with the impeaching witness's testimony, will be given weight by the jury and cause the jury to believe the testimony of the impeaching witness. Nevertheless, to ask a proper predicate question the prosecutor may have to include himself in it as the person to whom the alleged statement was made, and in such a case the harm remaining from the prosecutor's question will not justify barring it ab initio.