374 So.2d 496 (1979)
Alvin Bernard FORD, Appellant,
v.
STATE of Florida, Appellee.
No. 47059.
Supreme Court of Florida.
July 18, 1979.
Rehearing Denied September 24, 1979.
*497 Robert T. Adams, Jr., Marianna, for appellant.
Jim Smith, Atty. Gen., and Patti Englander, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This cause is here on direct appeal from a conviction of first degree murder and sentence of death. We have jurisdiction under article V, section 3(b)(1), Florida Constitution.
On the morning of July 21, 1974, Ford and three others, who had decided to commit a robbery, went with weapons to a Red Lobster Restaurant in Fort Lauderdale, Florida. During the robbery, after two people had escaped from the restaurant, Ford's three accomplices realized the police would soon arrive and so left the scene of the crime. Ford remained in order to effectuate the theft of some $7,000 from the restaurant's vault and was confronted by Officer Dimitri Walter Ilyankoff of the Fort Lauderdale Police Department. Ford shot the policeman three times, wounding him fatally. Appellant escaped in the decedent's police car, and his fingerprints were later found in the vehicle after it had been abandoned. He was arrested in the vicinity of Gainesville, Florida, and was returned to Fort Lauderdale for indictment and trial.
At trial, defense counsel moved to sequester the jury in view of allegedly heavy media coverage of all the events surrounding the death of the local officer. The judge denied the motion to sequester. Later in the trial, unauthorized reading material  four magazines of the Time-Life variety  was discovered in the jury room. A motion for mistrial was denied, it appearing to the judge that no prejudice had been demonstrated. Among the thirty witnesses presented by the State at trial was Mrs. Barbara Buchanan, an employee of the Red Lobster, who saw and heard the firing of the final shot. Some twenty witnesses later, appellant's counsel attempted to recall Mrs. Buchanan for further cross-examination after learning that she had made inconsistent statements which were not produced during discovery proceedings. This request was denied, as was the opportunity of calling another witness for the defense for the purpose of impeaching Mrs. Buchanan through evidence of her allegedly inconsistent prior statements.
Near the end of this two-week trial, defense counsel's secretary answered a call from an anonymous informant, who claimed that he had seen a juror, one Huber, in a box at a local racetrack on the preceding Friday. This informant said that he had heard Huber telling a companion that he was a juror at the trial of "the guy who killed the cop" and that the State had an "open and shut case." With the jury excluded, the secretary testified to this effect in court. Huber was brought before the judge, confirmed that he had been to the racetrack the preceding Friday, had sat where and with whom the tipster had indicated, and that he had told his companions that he was a juror on the Ford case. However, Huber denied that he had made any statement suggesting that he had made up his mind about the defendant's guilt or innocence. The judge denied a defense motion for mistrial on the basis of juror misconduct.
The jury found appellant guilty of first degree murder, and after the second phase of the trial held pursuant to section 921.141, Florida Statutes (1975), recommended the death penalty. The trial court entered judgment on the verdict and sentenced Ford to death.
On this appeal Ford raises three points. The first is that the death penalty statute is unconstitutional on both state and federal constitutional grounds. Second, he contends that the court's refusal to allow defense *498 counsel to recall Mrs. Buchanan for further cross-examination in the nature of impeachment was erroneous. Third, he argued that, in light of subsequent juror misconduct, it was reversible error for the trial court to deny a motion to sequester the jury.
Section 921.141, Florida Statutes (1975), has been authoritatively upheld as constitutional on both state and federal grounds. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); State v. Dixon, 283 So.2d 1 (Fla. 1973). To the extent that Dixon did not lay to rest appellant's argument that the death penalty is per se violative of the "right to enjoy ... life" under article I, section 2, Florida Constitution, we do so now.
As indicated above, at trial the State produced an eyewitness who saw and heard the last shot and identified Ford as the killer. After being examined by counsel for both sides, Mrs. Buchanan was excused. Later, appellant's attorney learned from another lawyer not involved in this case that the witness had made allegedly inconsistent statements with regard to this identification at a bond hearing held three months earlier for DeCosta, one of the other men charged with the instant criminal action. Apparently, the testimony at the DeCosta bond hearing was never transcribed, although the prosecuting attorney in Ford's case was aware of its existence and had in fact participated in the hearing. Appellant's attorney asked that Mrs. Buchanan be called for further cross-examination. The trial judge denied the request. Defense counsel later asked that a Fort Lauderdale police officer, one Bucata, be called as a witness for the defendant to testify to the fact that Mrs. Buchanan had told him that she could not see the killer above the waist. The defense evidently thought that such testimony would provide the predicate for impeachment by further cross-examination of Mrs. Buchanan concerning her ability to identify the defendant, an issue of critical importance in the trial. In his brief appellant submits that "[t]his factual situation clearly shows an abuse of discretion by the trial court in a capital case."
We do not find that the court erred in declining to accede to the defense request to recall Mrs. Buchanan for further cross-examination. Section 90.10, Florida Statutes (1975), clearly sets forth the prerequisites to impeachment of an adverse witness:
Impeachment of witness by adverse party  If a witness, upon cross examination as to a former statement made by him relative to the subject matter of the cause and inconsistent with his present testimony, does not distinctly admit that he has made such statement, proof may be given that he did in fact make it; but before such proof can be given, the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to witness, and he must be asked whether or not he made such statements.
Under the statute it is clear that a proper predicate for Mrs. Buchanan's impeachment could have been laid only by presenting her with the circumstances of her alleged prior inconsistent statement. This defense counsel failed to do. It was not the State's responsibility to transcribe the text of the DeCosta hearing, and nothing prevented defense counsel from requesting that such a transcription of Mrs. Buchanan's allegedly inconsistent testimony be made for purposes of impeachment at trial. Defense counsel never moved for a continuance to allow a court reporter to transcribe notes taken at the prior hearing. (We might point out that appellant has not furnished us a transcript of such testimony even now to aid us in determining the merit of this point on appeal.) Much the same can be said of the attempt to call Officer Bucata about the allegedly conflicting statements concerning identification which Mrs. Buchanan had supposedly made to him. Defense counsel had had an opportunity to explore this matter in cross-examination; trial judges have considerable latitude in deciding whether to alter orderly courtroom procedure, even in order to compensate for an attorney's oversight. See generally Rose v. Yuille, 88 So.2d 318 (Fla. 1956); Arbogast *499 v. State, 266 So.2d 161 (Fla.3d DCA 1972); Bowen v. Manuel, 144 So.2d 341 (Fla.2d DCA 1962). Finally, the appellant was not prejudiced by the trial court's rulings because the witness herself admitted on cross-examination that she had in fact given differing accounts of this criminal episode at different times:
"Q [Defense Counsel] Well, just let me ask you this: We are all human. With regard to these three or four times you talked to the officers and at least a couple of times with Mr. Satz, did your stories differ, at least to some extent, considering all of those statements?
"A Yes.
"Q They did; correct?
"A Yes."
Appellant's third argument is that, in view of subsequent juror misconduct, it was reversible error for the trial court to have denied his motion to sequester the jury. The purported misconduct consisted of the comments allegedly made by Huber at the racetrack and of the presence in the jury room during trial (but before deliberations) of news magazines which included articles on "Godfather II" and "The Law: Living on Death Row." Appellant further urges that it is an automatic abuse of discretion to deny a motion to sequester the jury in a capital case.
The State argues correctly that there is no authority for appellant's position that denial of a motion to sequester in a capital case is an automatic abuse of discretion. Rule 3.370(a), Florida Rules of Criminal Procedure, leaves the decision to the trial judge's discretion, and there is nothing about a capital case which makes a refusal to sequester a per se abuse of that discretion. Furthermore, the appellant has made no showing that there was such an abuse in the instant case. At trial, appellant's motion to sequester was supported only by the recollections of his counsel:
I would at this time move the Court to sequester the jury. As I indicated, it would be a distinct possibility. I don't think anybody is going to purposely violate the rule of the Court, particularly the jurors, but, Judge, knowing the news media, who are still present in the courtroom, I don't see how anybody can live in society with electronics, TV, radio driving to the courthouse in the morning, and not get some squib in the nature of the ones that were on in the morning, that is, to the effect that this was an execution.
All you have to do is hear something about "This was an execution," in my opinion, and we are going to have to start over. I do not think it is an unreasonable request at this time for this case and I am referring specifically to the WFTL news broadcast, about 8:00 o'clock this morning, followed by some comments of a fellow, identified on the radio as Joe Barberett, who was sort of editorializing, which I happen to have heard riding to work this morning.
Nothing in the record before us suggests the existence of unfair or unduly pervasive media coverage of this trial or the events which preceded it. Absent such a showing the trial judge's denial of Ford's motion to sequester was correct.
Of appellant's two post hoc grounds for challenging the denial of the motion to sequester, the only one which merits discussion is his attempt to utilize the alleged misconduct of juror Huber as a "bootstrap" to a conclusion that the court erred in refusing to sequester the jury from the outset. First, the court promptly questioned Huber about the incident, and the juror denied categorically that he told his companions at the racetrack anything beyond the fact that he was sitting on the Ford case. Thus Durano v. State, 262 So.2d 733 (Fla.3d DCA 1972), relied upon by appellant, is inapplicable because there the juror admitted discussing the merits of the case with an outsider. Second, even if one believes the anonymous tipster's story, as related by defense counsel's secretary, rather than Huber's account of the incident, it becomes clear that the transgression allegedly committed by the juror is not the evil at which sequestration is directed. Sequestration is designed to keep the jurors insulated from improper influences during *500 the course of the trial; the phone call suggests that Huber had made up his mind before trial and was attempting to express his views to others, not vice versa. Finally, defense counsel expressly decided not to move that Huber be dismissed from the panel and replaced by an alternate, despite the trial judge's evident willingness to entertain such a motion.
We note further that the trial judge and defense counsel agreed after the verdict that the latter would ask juror Huber to identify the young couple to whom he spoke at the racetrack about his status as a juror in the Ford case. Appellant's counsel could then interview these people and include in his motion for new trial any helpful information such an investigation developed; since there is no reference in the record to the result of such an inquiry, we must conclude that it did not yield anything further.
We come now to the matter of appellant's sentence of death. The trial judge carefully set forth his analysis of the applicability of the statutory aggravating and mitigating circumstances under section 921.141, Florida Statutes (1975), to the facts of this case.[1] He found that none of the *501 mitigating circumstances but all of the aggravating circumstances were present. While we agree that none of the mitigating circumstances are applicable, it is our conclusion *502 that the court erred in finding the existence of two of the aggravating circumstances, those listed in sections 921.141(5)(a) (defendant under sentence of imprisonment when capital felony committed) and (5)(b) (defendant previously convicted of another capital felony or of a felony involving the use or threat of violence to the person), Florida Statutes (1975). We note also that the trial judge found as separate aggravating factors that the homicide was committed while appellant was engaged in the attempted commission of the crime of robbery [section 921.141(5)(d), Florida Statutes (1975)], and that the capital felony was committed for pecuniary gain [section 921.141(5)(f), Florida Statutes (1975)]. Under the circumstances of this case the consideration *503 of the appellant's conduct as two independent aggravating factors is faulted by our ruling in Provence v. State, 337 So.2d 783 (Fla. 1976). Nevertheless, our review of the evidence convinces us that the other five aggravating circumstances may properly be said to exist in this case. The testimony of Mrs. Buchanan was that Officer Ilyankoff, after being wounded twice, was shot a third time when he posed no danger to Ford's escape and was in fact trying to cooperate with the armed appellant. We therefore make the specific finding that the killing was "especially heinous, atrocious, or cruel" under section 921.141(5)(h), Florida Statutes (1975). Consequently, even though there was error in assessment of some of the statutory aggravating factors, there being no mitigating factors present death is presumed to be the appropriate penalty. Elledge v. State, 346 So.2d 998 (Fla. 1977); State v. Dixon, supra.
We have not overlooked the testimony favorable to appellant's character and prior behavior presented by the defense in mitigation during the sentencing trial. We do not pretend to know what motivated Alvin Bernard Ford to take the life of Dimitri Walter Ilyankoff. Our duty under section 921.141, Florida Statutes (1975), as upheld by the United States Supreme Court in Proffitt v. State, supra, is to apply fairly the aggravating and mitigating circumstances duly enacted by the representatives of our citizenry to the facts of the capital cases which come before us. In this case the process compels the inescapable conclusion that the proper sentence is the death penalty.
In view of the opinion of the Supreme Court of the United States in Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), this Court by order entered June 21, 1977, directed to the trial judge, inquired of the trial judge whether in weighing the aggravating and mitigating circumstances of the case he considered information which the appellant had no opportunity to deny or explain. By such order, the trial judge who imposed the death sentence was directed to file a response with this Court within twenty days stating whether he imposed the death sentence in consideration of any information not known to appellant. The trial court was further directed to furnish this Court with any pre-sentence investigation, juvenile case file information, psychiatric reports, or otherwise, which were before it for consideration in imposing sentence. Pursuant to such order, a copy of which was served upon counsel for appellant and appellee, the trial judge filed his response in this Court on July 8, 1977, certifying that copies thereof were furnished to the Honorable Michael J. Satz, State Attorney, Seventeenth Judicial Circuit; Honorable Robert E. Lockwood, Clerk of Circuit Court; Honorable Robert T. Adams, Jr., counsel for appellant; and Honorable Patti Englander, Assistant Attorney General, counsel for appellee. By his response the trial judge advises this Court that he did not impose the death sentence in consideration of any information not known to appellant. He responds that according to the court's case file records and the judge's best recollection no written psychiatric reports or juvenile case file reports were furnished to the court. He affirmatively states that a pre-sentence investigation report, copy of which was attached to his response, was prepared at the request of, and a copy furnished to, the trial attorney for appellant, Honorable Robert T. Adams, Jr., in its entirety, based on the belief of the trial judge.
No response having been filed in this Court by counsel for the appellant or appellee contradicting or amplifying the response of the trial judge, and after a review of the pre-sentence investigation report, we expressly find that appellant was not denied due process in the imposition of the death sentence due to consideration by the trial judge of information which the appellant had no opportunity to deny or explain.
Accordingly, the judgment and sentence are affirmed.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG and HATCHETT, JJ., concur.
NOTES
[1] defendant was indicted for the crime of Murder in the first degree of Dimitri Walter Ilyankoff, age 40.
The Jury found the defendant guilty of Murder in the first degree of the said Dimitri Walter Ilyankoff, pursuant to which finding the Court adjudged the defendant to be guilty of Murder in the first degree.
The Court having heard all the evidence in this case, and having had the benefit of a pre-sentence investigation and report conducted by the Broward County office of the Florida Parole and Probation Commission at the request of the defendant, and having had the further benefit of an advisory sentence found and returned by the Trial Jury herein recommending that sentence of death be imposed against the defendant, the Court hereby makes its findings as to each of the elements of aggravation and/or mitigation which are set forth in Florida Statutes and which were guide-lines for the Jury in considering its Advisory Sentence.
The Court has summarized the facts as brought out in the Trial and in the pre-sentence investigation report and applied them to each element of aggravation and/or mitigation where such elements are applicable.
In summarizing these elements of aggravation and/or mitigation, the Court has listed them in reverse order as follows:
MITIGATING CIRCUMSTANCES
A. WHETHER DEFENDANT HAS NO SIGNIFICANT HISTORY OF PRIOR CRIMINAL ACTIVITY.
FACT:
On or about March 18, 1972, the defendant was found guilty of the felony offense of breaking and entering with intent to commit a felony. He was placed on probation, which probation he has now obviously violated.
FACT:
The pre-sentence investigation report reflects that defendant was repeatedly involved in criminal narcotics violations, including, among other things, numerous large sales of cocaine for profit.
CONCLUSION:
There is no mitigating circumstance under this paragraph because there was a significant history of other criminal activity by the Defendant.
B. WHETHER THE MURDER WAS COMMITTED WHILE DEFENDANT WAS UNDER THE INFLUENCE OF EXTREME MENTAL OR EMOTIONAL DISTURBANCE.
FACT:
Although the Defendant did not testify the testimony of the other witnesses involved in the incident reflected the Defendant was in control of his own activities and, in fact, in control of the situation. He voluntarily chose to remain at the scene after the three others involved had fled, thereby creating the confrontation out of which the instant case arose.
FACT:
The Defendant was examined by a psychiatrist, Dr. David Taubel, of Broward County, Florida, who testified that the Defendant understood the nature and quality of his acts, but that he had a basic hostility towards society, although Dr. Taubel further testified that the Defendant could be salvaged, he admitted that it would be a long and involved process.
CONCLUSION:
There is no mitigating circumstance under this paragraph.
C. WHETHER THE VICTIM WAS A PARTICIPANT IN THE DEFENDANT'S CONDUCT OR CONSENTED TO THE ACT.
FACT:
The defendant, having already grievously wounded the decedent, Dimitri Walter Ilyankoff, again shot Dimitri Walter Ilyankoff in the head after he was helpless, no longer constituted a threat to the defendant nor to his escape and, in fact, after the decedent repeatedly asked for aid.
CONCLUSION:
There is obviously no mitigating circumstance under this paragraph.
D. WHETHER THE DEFENDANT WAS AN ACCOMPLICE IN THE MURDER COMMITTED BY ANOTHER PERSON, AND THE DEFENDANT'S PARTICIPATION WAS RELATIVELY MINOR.
FACT:
The trial evidence showed that as set forth in paragraph B above, the defendant voluntarily remained at the scene after the other participants in the crime had fled. The defendant was obviously a principal and, in fact, major principal in the murder of Dimitri Walter Ilyankoff.
CONCLUSION:
There is no mitigating circumstance under this paragraph.
E. WHETHER THE DEFENDANT ACTED UNDER EXTREME DURESS OR UNDER THE SUBSTANTIAL DOMINATION OF ANOTHER PERSON.
FACT:
No element of duress was ascertained by the psychiatrist as set forth in paragraph B above. There is absolutely no testimony of duress in any degree which would justify the crime of which he was convicted.
CONCLUSION:
There is no mitigating circumstance under this paragraph.
F. WHETHER THE CAPACITY OF THE DEFENDANT TO APPRECIATE THE CRIMINALITY OF HIS CONDUCT OR TO CONFORM HIS CONDUCT TO THE REQUIREMENTS OF LAW WAS SUBSTANTIALLY IMPAIRED.
FACT:
As stated in paragraph B above, Dr. Taubel determined that the defendant was intelligent and able to understand the nature and quality of his acts. The evidence showed that the defendant had in the past held jobs and positions of considerable responsibility and that he had had at least some exposure to a college education.
CONCLUSION:
There is no mitigating circumstance under this paragraph.
G. THE AGE OF THE DEFENDANT AT THE TIME OF THE CRIME.
FACT:
The defendant is a twenty-one year old black male, apparently physically mature and with at least an average intelligence without any impairment of the reasoning process.
CONCLUSION:
Although defendant's comparative youth might be considered a mitigating circumstance, it is not of sufficient mitigation to overcome the other circumstances of this case.
CONCLUSION OF COURT
There are no mitigating circumstances existing  either statutory or otherwise  which outweighs any aggravating circumstances, to justify a sentence of life imprisonment rather than a sentence of death.
The Court now summarizes the facts brought out in trial and the pre-sentence investigation and applies them to the elements of aggravation which were considered by the Jury in arriving at their Advisory Sentence.
AGGRAVATING CIRCUMSTANCES
A. WHETHER THE DEFENDANT WAS UNDER SENTENCE OF IMPRISONMENT WHEN HE COMMITTED THE MURDER OF WHICH HE WAS CONVICTED.
FACT:
Although the defendant was not imprisoned at the time of the murder, he did actually prevent arrest, prosecution and imprisonment for his other crime at least temporarily, by the very murder for which he has been convicted.
CONCLUSION:
This is an aggravating circumstance which justifies a sentence of death.
B. WHETHER THE DEFENDANT HAS PREVIOUSLY BEEN CONVICTED OF ANOTHER CAPITAL FELONY OR OF A FELONY INVOLVING THE USE OF THREAT OF VIOLENCE TO THE PERSON.
FACT:
The defendant has been found guilty of breaking and entering to commit a felony, which would obviously involve the threat of violence to the person of anyone whom he might have confronted on the premises. Further, he has admitted the unlawful sale of narcotics drugs, which likewise involves a threat to the safety of members of the public.
CONCLUSION:
There is an aggravating circumstance under this paragraph which justifies the imposition of the sentence of death.
C. WHETHER, IN COMMITTING THE MURDER OF WHICH HE HAS JUST BEEN CONVICTED, THE DEFENDANT KNOWINGLY CREATED A GREAT RISK OF DEATH TO MANY PERSONS.
FACT:
The trial evidence shows that the defendant not only threatened a number of other persons beside the decedent with a deadly weapon; he further operated a stolen motor vehicle at high rates of speed and at an obvious risk to the lives and safety of many others on the highways.
CONCLUSION:
There is an aggravating circumstance under this paragraph.
D. WHETHER THE MURDER OF WHICH DEFENDANT WAS CONVICTED WAS COMMITTED WHILE HE WAS ENGAGED IN THE COMMISSION OF, OR AN ATTEMPT TO COMMIT, OR FLIGHT AFTER COMMITTING OR ATTEMPTING TO COMMIT, ANY ROBBERY, RAPE, ARSON, BURGLARY, KIDNAPPING, AIRCRAFT PIRACY, OR THE UNLAWFUL THROWING, PLACING OR DISCHARGING OF A DESTRUCTIVE DEVICE OR BOMB.
FACT:
The murder committed by defendant was committed during his attempted commission of the crime of robbery.
CONCLUSION:
There is an aggravating circumstance under this paragraph in that defendant was attempting to commit the crime of robbery at the time of the commission of the within murder.
E. WHETHER THE MURDER OF WHICH THE DEFENDANT HAS BEEN CONVICTED WAS COMMITTED FOR THE PURPOSE OF AVOIDING OR PREVENTING A LAWFUL ARREST OR EFFECTING AN ESCAPE FROM CUSTODY.
FACT:
As previously stated the evidence and testimony showed that the defendant committed the murder for which he stands convicted for the purpose of preventing his lawful arrest at the time of the robbery.
CONCLUSION:
There is an aggravating circumstance here in that he did murder Dimitri Walter Ilyankoff to avoid and prevent his arrest.
F. WHETHER THE MURDER OF WHICH THE DEFENDANT HAS BEEN CONVICTED WAS COMMITTED FOR PECUNIARY GAIN.
FACT:
The evidence and testimony showed that the defendant during the commission or the attempt to commit a robbery forced the restaurant manager to open the safe and, in fact, refused to leave with the other miscreants presumably because he had not had time to empty the safe of its contents.
CONCLUSION:
There is an aggravating circumstance in this paragraph in that the defendant remained after the others involved in the crime of robbery had already left in order to avail himself of the remaining contents of the safe.
G. WHETHER THE MURDER OF WHICH THE DEFENDANT HAS BEEN CONVICTED WAS COMMITTED TO DISRUPT OR HINDER THE LAWFUL EXERCISE OF ANY GOVERNMENTAL FUNCTION OR THE ENFORCEMENT OF LAWS.
FACT:
The defendant shot the decedent, Dimitri Walter Ilyankoff, without warning while the decedent was investigating a robbery or attempted robbery.
CONCLUSION:
There is an aggravating circumstance under this paragraph.
H. WHETHER THE MURDER OF WHICH THE DEFENDANT HAS BEEN CONVICTED WAS ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL.
FACT:
As previously stated the defendant shot the decedent without warning twice in the body, grievously wounding him. Then, despite the decedent's pleas for help and after he no longer constituted a threat to the defendant's safety or his escape and while the decedent was in fact completely helpless, the defendant again shot the decedent, this time in the head causing his immediate death.
CONCLUSION:
There is an aggravating circumstance under this paragraph.
CONCLUSION OF COURT
There are sufficient and great aggravating circumstances which exist to justify the sentence of death. Indeed, it is difficult to imagine a crime which is more heinous, atrocious and cruel and under our existing law it is deserving of no sentence but death. Accordingly and having adjudged you to be guilty of murder in the first degree, I hereby sentence you to be remanded instanter and without bail to the custody of the Sheriff of Broward County, Florida, for further remanding by him to the custody of the authorities of the Division of Corrections of the State of Florida, by them to be kept in close confinement in the Florida State Penitentiary System until a date is set for your execution and that on such date you be put to death in the manner prescribed by law, that is, by electrocution. You have thirty days from this date within which to appeal the Judgment and Sentence and I hereby appoint the Special Assistant Public Defender, Robert T. Adams, to represent you on your appeal.
May God have mercy on your soul.