536 So.2d 221 (1988)
Juan BANDA, Appellant,
v.
STATE of Florida, Appellee.
No. 69102.
Supreme Court of Florida.
December 8, 1988.
Certiorari Denied March 20, 1989.
*222 James Marion Moorman, Public Defender and Douglas S. Connor, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
Certiorari Denied March 20, 1989. See 109 S.Ct. 1548.
PER CURIAM.
We grant rehearing for purposes of clarification and substitute the following as the opinion of the Court.
Juan Banda appeals his conviction for first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction, vacate the sentence and remand with instructions that the trial court impose a sentence of life.
In July 1985, Juan Banda ("appellant") shared a house with Melber Tyrone "Terry" Denmark, the victim, and Allen Jones, a key state witness. On Friday, July 5, 1985, appellant and Denmark became embroiled in an argument when appellant apparently took $10.00 from Denmark and failed to repay it. Witnesses later testified that during this time Denmark told appellant he was going to beat him up and that appellant had better watch out.
One of the state's witnesses, Allen Jones, who described himself as the victim's best friend, testified under oath that he witnessed the victim threaten appellant with a severe beating. Another of the state's witnesses, Frank Townsend, testified that appellant was fearful the victim would try to kill him:

*223 Q. All right, and what exactly did Banda tell you?
A. He said that, Mmm, Terry had threatened the next time he seen him that he was going to kill him, so he said he wasn't going to hide from him, he was going to get him first.
One of appellant's cellmates in jail, Charles Blanton, testified that appellant also had said that "the guy threatened to kill me so I figured I better get him first." Other testimony corroborated the victim's propensity for violence. For instance, the victim's nickname among friends was "Rambo," and he had boasted of shooting his ex-wife in the face.
On Sunday, July 7, 1985, appellant and codefendant David Davis went into the woods with a man named Frank Townsend, whose house was nearby. Townsend said that Davis and appellant discussed killing Denmark because Denmark had threatened to kill appellant. At a certain point in the woods, appellant and Davis dug a large hole. After leaving the woods, appellant and Davis noticed some lengths of pipe lying near Townsend's house, and commented that they would make good weapons. Appellant told Townsend not to worry if he heard something during the night, because it would just be Davis and he.
Around 8 p.m., Townsend went to the hole appellant and Davis had dug. He found a body buried there and subsequently called police. An autopsy of the body revealed that the victim had died of several crushing blows to the skull, made by a blunt object such as a tire iron. Strangulation may have been a factor in the death, although the marks on the victim's neck also were consistent with blunt trauma.
At trial, Allen Jones came forward and said he had last seen Denmark alive on the floor of Jones' living room. After drinking beer and tequila, Denmark had fallen asleep on the carpet, and Jones had given him a pillow and a quilt. Police later found blood stains and hairs on the carpet and the quilt that were consistent with Denmark's blood and hair types.
The jury returned a verdict of guilty and recommended death on a 7 to 5 vote, and the judge concurred in the recommendation. In sentencing Banda to death, the court found only a single aggravating factor, that the murder was cold, calculated, premeditated, and without pretense of moral justification. See § 921.141(5)(i), Fla. Stat. (1985).
On this direct appeal Banda raises eight issues.
First, he contends that the trial court's failure during the guilt phase to give a complete instruction on homicide denied him his due process rights. The record before us discloses that with the concurrence of defense counsel, the trial court instructed the jury on the crimes of first-degree murder, second-degree murder and manslaughter, but did not so instruct on excusable and justifiable homicide. Banda argues that because murder constitutes the unlawful killing of a human being, the court's failure to explain that excusable and justifiable homicide were lawful killings rendered the instruction fundamentally defective. While the court should have given at least a minimal definition of excusable and justifiable homicide, Banda was not prejudiced because there was no evidence which would have supported either defense. Cf. Squires v. State, 450 So.2d 208 (Fla.), cert. denied, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984), in which a stipulated instruction referring to excusable and justifiable homicide by name but failing to define them was deemed not to be fundamental error.
As his second issue, appellant contends that the state prejudiced the defense by failing to transmit a timely witness list containing the name of a key state witness. The record reveals that the court below conducted a proper inquiry under Richardson v. State, 246 So.2d 771 (Fla. 1971), determined that the state's tardiness was inadvertent and found that the state had taken all steps necessary to remedy any prejudice to the defense. We can find no abuse of discretion and must sustain the court below on this issue. See Zeigler v. State, 402 So.2d 365, 372 (Fla. 1981), cert. *224 denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982).
Third, appellant argues that the trial court erred in preventing the defense from impeaching a state witness, Allen Jones, by questioning about his prior use of aliases. Although we can imagine situations in which such testimony would be relevant, as where the witness has denied the use of an alias, we conclude that the testimony was irrelevant in the present case and that the trial court acted within its discretion in excluding this testimony.
Fourth, appellant urges this Court to find error in the trial court's decision not to sequester the jury between the guilt and penalty phases. Generally, sequestration of a jury during trial is within the discretion of the trial court absent a showing of harm or prejudice to the defense. Ford v. State, 374 So.2d 496 (Fla. 1979), cert. denied, 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980). We have recognized, however, that a jury must be sequestered during deliberations in a capital case until its verdict is reached. Livingston v. State, 458 So.2d 235 (Fla. 1984). However, in the present case, appellant urges us to extend the reasoning of Livingston to the period between the two phases of a capital trial, when no deliberations occur. This we will not do. The matter remains within the discretion of the trial court absent some showing by appellant of prejudice, which is not present in this instance.
As his fifth issue, appellant argues that the trial court improperly prevented the defense from reading the list of statutory aggravating factors during the penalty phase. Because we vacate the death penalty on other grounds, we do not reach this issue.
Sixth, appellant raises three issues about the instructions given to the jury during the penalty phase. He contends that the trial court violated the teachings of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Appellant essentially argues that the standard jury instructions violate Caldwell because they do not contain a complete instruction on the appellate standard of review established by Tedder v. State, 322 So.2d 908 (Fla. 1975). However, Caldwell stands only for the proposition that the constitution is violated if the jury receives erroneous information that denigrates its role. See Caldwell, 472 U.S. at 341, 105 S.Ct. at 2646 (O'Connor, J., concurring). The present standard instructions are not erroneous statements of the law.
Appellant next argues that the trial judge erred in not instructing the jury anew on the meaning of "reasonable doubt" during the penalty phase, and that the trial court committed error in not instructing the jury that a tie vote constitutes a recommendation of life in prison during the penalty phase. Since we vacate the death sentence on other grounds, we do not reach these issues.
As his seventh and eight points on appeal, appellant contends (a) that the trial court erred in finding that the murder was committed without pretense of moral or legal justification, and (b) that the sentence is not proportional. We agree.
Florida law requires that, before a murder can be deemed cold, calculated, and premeditated,[1] it must be committed "without any pretense of moral or legal justification." § 921.141(5)(i), Fla. Stat. (1985). The state must prove this last element beyond a reasonable doubt, in addition to the other elements of this particular aggravating factor. See Jent v. State, 408 So.2d 1024, 1032 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982).
Our decisions in the past have established general contours for the meaning of the word "pretense" as it applies to capital sentencings. For instance, we have held that a "pretense" of moral or legal justification existed where the defendant consistently had made statements that he had killed the victim only after the victim *225 jumped at him and where no other evidence existed to disprove this claim. Cannady v. State, 427 So.2d 723, 730-31 (Fla. 1983). We reached this conclusion even though the accused himself, an obviously interested party, was the only source of this testimony.
On the other hand, we have upheld the trial court's finding that no pretense existed where the defendant's statements were wholly irreconcilable with the facts of the murder. Thus, we have upheld a finding that no pretense existed where the accused said the victim intended to kill him over a $15.00 debt, but where the evidence showed that the victim had never been violent or threatening and had been attacked by surprise and stabbed repeatedly.[2]Williamson v. State, 511 So.2d 289, 293 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988).
We conclude that, under the capital sentencing law of Florida, a "pretense of justification" is any claim of justification or excuse that, though insufficient to reduce the degree of homicide, nevertheless rebuts the otherwise cold and calculating nature of the homicide.
Applying these principles, we find Williamson clearly distinguishable from the present case. Substantial uncontroverted testimony of several witnesses exists on this record that the victim was a violent man and had made threats against appellant. Upon this record, we thus must hold that appellant established a reasonable doubt as to the "no pretense of justification" element. The state's own theory of prosecution  that appellant plotted to kill the victim to prevent the victim from killing him  underscores this conclusion. Together with the uncontroverted evidence establishing the victim's violent propensities, we find that appellant acted with at least a pretense of moral or legal justification. That is, a colorable claim exists that this murder was motivated out of self-defense, albeit in a form clearly insufficient to reduce the degree of the crime.
Thus, the sole aggravating factor was improperly found by the court below, since the state has not met its burden of proof. Accordingly, we must vacate the sentence. The death penalty is not permissible under the law of Florida where, as here, no valid aggravating factors exist. § 921.141(3), Fla. Stat. (1985).
Similarly, we conclude that death would not be proportional in this instance. Death is reserved only for the most aggravated of murders, and thus is not proportional in a case such as this one.
The conviction is affirmed. We vacate the sentence of death and remand with instructions that a sentence of life in prison be imposed upon appellant.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Elsewhere, we have defined "cold, calculated, and premeditated" as "a careful plan or prearranged design to kill." Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).
[2] The principles applied in Cannady and Williamson harmonize with the generally accepted American usage of the word "pretense." Webster's Third New International Dictionary 1797 (1981) defines the word as "something alleged or believed on slight grounds: an unwarranted assumption... ."