550 So.2d 450 (1989)
Doy James CHRISTIAN, Appellant,
v.
STATE of Florida, Appellee.
No. 71636.
Supreme Court of Florida.
September 28, 1989.
Rehearing Denied November 6, 1989.
Michael E. Allen, Public Defender, and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Doy Christian appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction, but vacate the sentence and remand for the imposition of a life sentence in accordance with the jury's recommendation.
On April 12, 1987, Christian and the victim of this crime, another inmate at Florida State Prison named Alfred Moore, were playing cards. Christian was winning. Moore wagered two bars of soap and then attempted to cheat in an effort to regain what he had lost. Christian, however, caught Moore and took the two bars of soap. Under the inmate "code," anyone *451 caught cheating at cards lost his entire wager.
Later that day, Moore was still harboring an insane hatred of Christian over the incident. Sneaking up behind Christian, Moore brandished a forty-pound curling iron used by weight lifters and smashed it into Christian's head, knocking him unconscious immediately. Moore would have continued pounding Christian had another inmate not intervened. Even then, Moore begged the other inmate to release him so he could kill Christian. Christian suffered a deep head wound, requiring stitches and two days of observation.
Moore's violence toward Christian did not end with the attack. For the next few weeks, Moore mounted a constant barrage of threats at Christian and threatened to kill Christian's parents when he was released from prison. He threatened to inflict further injury on Christian, promised he would kill Christian sooner or later, and made repeated suggestions that Christian would be forced to become his homosexual object. These threats continued up until the day of Moore's death.
Three weeks after Moore's initial attack on Christian, Christian took matters into his own hands. When Moore was being escorted in handcuffs through the prison by two unarmed guards, Christian managed to shove the guards aside and attack Moore with a knife that Christian previously had hidden. Christian then pushed Moore off a third-floor deck. Moore died of multiple stab wounds and blunt trauma head injuries. A jury convicted Christian of first-degree murder and recommended a sentence of life imprisonment. However, the trial judge found four aggravating factors[*] and none in mitigation and sentenced Christian to death.
In this appeal, Christian first argues that the trial court erred in excluding testimony tending to prove he lacked the mental ability to form specific intent. Specifically, defense counsel had attempted to introduce testimony by several inmates that Christian's mental condition changed following Moore's attack, possibly as a result of head injuries. This argument essentially is in the vein of "diminished capacity," a defense recently rejected in Florida. Chestnut v. State, 538 So.2d 820 (Fla. 1989). Accordingly, the trial court's ruling was proper on this issue.
After examining the arguments of counsel and conducting an independent review of the record, we find that there was sufficient evidence to support Christian's conviction, which we affirm.
As to the penalty, Christian first argues that the trial court erred in finding that the homicide "was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification." § 921.141(5)(i), Fla. Stat. (1987). Christian contends that even if his actions demonstrated calculation, they nevertheless were based on at least a "pretense of moral or legal justification."
In Cannady v. State, 427 So.2d 723 (Fla. 1983), this Court addressed the issue of what constitutes a "pretense" of moral or legal justification. We found that Cannady had such a pretense because, during his confessions, he repeatedly stated that he never intended to harm the victim. The evidence corroborated these statements, since it showed that Cannady had shot the victim only after the victim jumped at him. There was no evidence to disprove these contentions.
Similarly, in Banda v. State, 536 So.2d 221 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989), we also found a pretense of justification. There, we were swayed by evidence of the victim's violent nature and apparent ability to harm Banda, which caused a plausible fear in Banda that the victim would try to kill him. We then concluded that a "pretense" of moral or legal justification could consist of any "colorable claim ... that [the] murder was motivated out of self-defense, albeit in a form clearly insufficient *452 to reduce the degree of the crime." Id. at 225.
On the other hand, this Court has upheld a finding of no pretense of justification in a prison killing when the victim was attacked by surprise and repeatedly stabbed, when there was no evidence the victim had engaged in prior threatening acts. Williamson v. State, 511 So.2d 289 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988).
In the present case, we find ample evidence showing that Christian had at least a "pretense" of moral or legal justification. As in Banda, this record discloses at least a colorable claim that the murder "was motivated out of self-defense," although in a form legally insufficient to serve as a defense to the crime. Indeed, this record is replete with unrebutted evidence of the victim's threats of violence to Christian and his apparent inclination to fulfill them. This is corroborated by the fact that during his incarceration in Palm Beach County prior to his transfer to Florida State Prison, Moore had engaged in more than a hundred incidents that included several arsons, attacks on nineteen deputy sheriffs and a nurse, a suicide attempt, and several attempted escapes. Christian's attack on Moore was preceded by three weeks of constant harassment and threats. There was expert medical testimony that Moore's actions against Christian effected a psychological change in Christian. Prior to the battery by Moore, he was friendly and outgoing. Subsequent to it he was withdrawn and brooding. During the commission of the homicide fellow prisoners described him as being in a daze, or acting as though he was out of it. While this does not negate his guilt, it is a permissible additional factor for the jury to consider when making its recommendation. Moore's hatred of Christian had begun with a homicidal attack that would have succeeded had other inmates not intervened. The extreme behavior of Moore is only underscored by the fact that Moore decided to kill defendant over the loss of two bars of soap in a wager.
We find the present facts establish a "pretense" of moral and legal justification more strongly than those in Banda. Accordingly, the trial court erred in finding in aggravation that the murder was cold, calculated, and premeditated and without pretense of legal or moral justification.
Second, Christian argues that sufficient mitigating evidence existed to support the jury's recommendation, notwithstanding the judge's finding to the contrary. We agree.
Certainly the facts of the murder fully support a conviction of first-degree murder. But the facts just recited, particularly those contained in the prison's own records, bear out and support the jury's recommendation of life in this instance. Moore was a violent man who had attacked Christian in a homicidal rage and had continued to make threats up to the time Christian killed Moore. We cannot say that a jury would be unreasonable in weighing this evidence in mitigation and concluding that death was not the appropriate penalty.
Accordingly, we vacate the sentence of death and remand for imposition of life imprisonment under Tedder v. State, 322 So.2d 908 (Fla. 1975), where we stated:
In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
Id. at 910.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., dissents with an opinion.
McDONALD, Justice, dissenting.
Christian and Alfred Moore, inmates at Florida State Prison, did not get along with one another. On April 12, 1987, after Christian accused him of cheating during a card game, Moore hit Christian in the head with a metal weight-lifting bar. Three *453 weeks later, while still under close detention for the attack on Christian, Moore visited the infirmary. Christian, knowing that Moore would be out of his cell, retrieved a knife which he had previously hidden. While two unarmed guards escorted the handcuffed Moore back to his cell, Christian pushed the guards aside, chased after Moore who had started running, caught him, stabbed him twenty-six times, and pushed him off a third-floor deck. Moore died of multiple stab wounds and blunt trauma head injuries. A jury convicted Christian of first-degree murder and recommended a sentence of life imprisonment. Finding four aggravating factors[1] and none in mitigation, however, the trial court, in a comprehensive and analytical order, overrode the jury's recommendation and sentenced Christian to death.
One of the statutory aggravating factors is that the homicide "was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification." § 921.141(5)(i), Fla. Stat. (1987). Christian argues that his actions did not rise to the level needed to be found to be cold, calculated, and premeditated. In the alternative he argues, and the majority agrees, that even if his actions met the first part of the statute, he had a pretense of moral or legal justification for committing the murder.
Simple premeditation which might be sufficient to support a conviction of premeditated first-degree murder is not sufficient to support the aggravating circumstance at issue. Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). Instead, heightened premeditation, demonstrated by the method and manner of the killing, is required. Hamblen v. State, 527 So.2d 800 (Fla. 1988). Murders which can be characterized as executions fit within that definition. Routly v. State, 440 So.2d 1257 (Fla. 1983), cert. denied, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 888 (1984); McCray v. State, 416 So.2d 804 (Fla. 1982). This aggravating factor can be shown by "advance procurement of a weapon, lack of provocation, and the appearance of a killing carried out as a matter of course." Swafford v. State, 533 So.2d 270, 277 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989).
As stated in the sentencing order, Christian brooded over Moore's attack on him, secured a knife, knew that Moore would be handcuffed while outside his cell,[2] retrieved his contraband knife from its hiding place when he knew that Moore was out of his cell, followed Moore and the guards upstairs, refused to heed Moore's cries for mercy and the guards' orders to stop, stabbed Moore twenty-six times while chasing him around the third-floor, and, finally, pushed him off the third-floor deck to the concrete surface of the first floor. The record supports these conclusions. Christian testified that he obtained the knife for protection. Retrieving the weapon from its hiding place and stalking Moore, when he knew Moore would be out of his cell and, therefore, accessible, but defenseless because of the handcuffs, however, demonstrates an offensive, rather than a defensive, motivation. Moreover, although Moore had verbally abused Christian, due to his being under close confinement, he had no present ability to make good any threats. Rather than provoking the attack that killed him, Moore tried to run away from Christian. Two inmates locked in their third-floor cells within feet of Christian's attack on Moore testified on the state's behalf. They stated that Moore tried to evade Christian and begged for his life, that Christian spat in Moore's face before stabbing him in the eyes, that the unarmed guards tried to beat Christian away from Moore with their walkie-talkie, *454 that Moore was still alive when Christian stopped stabbing him,[3] that guards could be heard approaching, that several inmates urged Christian to ease up because it was obvious that he was going to push Moore off the third floor, and that Christian had to lift Moore to clear a three-inch ledge before shoving him over the side. The evidence shows this killing to have been a methodical execution and that Christian fully intended to kill, rather than just injure, Moore. The trial court properly found Christian's conduct to be cold, calculated, and premeditated. Thus, the critical factor is whether Christian had a pretense of moral or legal justification.
In Cannady v. State, 427 So.2d 723 (Fla. 1983), this Court found that Cannady had at least a pretense of moral or legal justification because during his confessions he repeatedly stated that he never intended to harm the victim, whom he shot only after the victim jumped at him, and no evidence to disprove these contentions existed. Similarly, in Banda v. State, 536 So.2d 221 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989), we found a pretense of justification because the victim's violent nature and apparent ability to harm Banda caused a real fear in Banda that the victim would kill him. On the other hand, this Court upheld a finding of no pretense of justification in a prison killing where the victim engaged in no threatening acts prior to his being attacked by surprise and repeatedly stabbed. Williamson v. State, 511 So.2d 289 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988). Although Moore had threatened Christian, he had no chance to act on those threats due to his being in close confinement. This is a distinguishing factor from Banda. Banda was exposed to immediate danger from his victim. Anticipatory retaliation when no present danger existed cannot justify Christian's actions. The evidence leads to the conclusion that Moore's being out of his cell and, therefore, accessible, rather than Moore's actions or threats, prompted the immediate attack on him.
In rejecting Christian's pretense of justification theory the trial court stated:
At the outset in consideration of this element this Court is well aware that arguments may be made, by some, and in fact were made by able counsel for the defense in this case, that this murder somehow must not fall within the category of those deserving the death penalty because of the prior attack by the victim on the defendant and also because of some special consideration that should be given to prisoners who perceive their status somehow threatened if they do not retaliate. Such argument and position are absolutely repugnant to this Court and cannot be rationalized by an informed society that truly wishes to preserve human life. If the retribution by defendant is to be classified as having any pretense of moral or legal justification, then the lives of all prisoners and others are in jeopardy at the hands of those so inclined to vengeance.
I agree that some of society's most violent members reside in our prisons, but to find that Christian had even a pretense of moral or legal justification in killing Moore would be to condone the creation of an open season by inmates on their fellow inmates with whom they have had arguments or physical encounters.
Neither do I agree that the trial court erred in overriding the jury's recommendation of life imprisonment. A jury recommendation must be given great weight under our death penalty statute. Tedder v. State, 322 So.2d 908 (Fla. 1975). "In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Id. at 910. If the jury's recommendation is not based on valid mitigating circumstances which can serve as a reasonable basis for that recommendation, however, a life recommendation *455 can be overridden. Thomas v. State, 456 So.2d 454 (Fla. 1984). See Mills v. State, 476 So.2d 172 (Fla. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). In fact, if a death sentence is appropriate, i.e., supported by aggravating evidence, and "some matter not reasonably related to a valid ground of mitigation has swayed the jury to recommend life, such as through emotional appeal, prejudice, or some similar impact, it is proper for the judge to overrule the jury's recommendation." Thomas, 456 So.2d at 460.
Christian claims that, because of the inmate code of justice by which inmates solve their own problems, the prison administration's indifference, and Moore's conduct, the jury reasonably could have concluded that Christian had to kill Moore before he killed Christian. As discussed above, Christian had no legal or moral justification for killing Moore. Allowing inmates to kill one another because they are inmates makes the application of the death penalty arbitrary and cannot be a reasonable basis for a jury's recommending life imprisonment. Compare Bolender v. State, 422 So.2d 833 (Fla. 1982) (the victims' being armed cocaine dealers does not justify robbing, torturing, kidnapping, and murdering them), cert. denied, 461 U.S. 939, 103 S.Ct. 2111, 77 L.Ed.2d 315 (1983). See also Burch v. State, 522 So.2d 810, 815 (Fla. 1988) (Shaw, J., concurring in part, dissenting in part).
Citing Lusk v. State, 446 So.2d 1038 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984), Christian argues that his death sentence is disproportionate as another facet of his claim that the jury's recommendation should not have been overridden. Lusk, like Christian, killed a fellow inmate who had threatened him, and Lusk's jury also recommended life imprisonment for him. Because this Court mentioned, 446 So.2d at 1043, that Lusk committed that murder while serving three life sentences for armed robbery and first-degree murder, Christian urges that Lusk had a propensity to kill which Christian does not. Christian admits, however, that he has a violent background. When he killed Moore, he was serving a thirty-year sentence for armed robbery and aggravated assault. In 1983 he was convicted of another aggravated assault, while in prison, and had been the subject of several disciplinary reports, mostly for fighting. Additionally, Moore, unlike Lusk's victim, had, due to being under close confinement, no present ability to effectuate his threats.
That we found Lusk deserving of the death penalty does not mean that Christian is not so deserving. The trial court properly found that four aggravating circumstances had been established and, after considering all the mitigating evidence, determined that it did not outweigh these aggravating circumstances. The jury could not have based its recommendation on valid mitigating considerations. Therefore, the trial court's sentencing Christian to death represents a reasoned judgment based on the circumstances of this murder and Christian's character, and the trial court properly overrode the jury's recommendation.
NOTES
[*] Committed by person under sentence of imprisonment; previous conviction of violent felony; heinous, atrocious, or cruel; and cold, calculated, and premeditated with no pretense of moral or legal justification. § 921.141(5)(a), (b), (h), (i), Fla. Stat. (1987).
[1] Committed by person under sentence of imprisonment; previous conviction of violent felony; heinous, atrocious, or cruel; and cold, calculated, and premeditated with no pretense of moral or legal justification. § 921.141(5)(a), (b), (h), (i), Fla. Stat. (1987).
[2] Moore was still under close restraint because of the attack on Christian and could be outside his locked cell only when handcuffed and escorted by guards. Christian, however, like other inmates not under close restraint, had the run of the building and could come and go as he wished.
[3] The medical examiner agreed and testified that, in his opinion, Moore was still alive until he hit the floor.