691 So.2d 466 (1997)
Jerry Leon HALIBURTON, Petitioner,
v.
Harry K. SINGLETARY, Jr., Respondent.
Jerry Leon HALIBURTON, Appellant,
v.
STATE of Florida, Appellee.
Nos. 79382, 83749.
Supreme Court of Florida.
January 9, 1997.
Rehearing Denied April 10, 1997.
*468 Michael J. Minerva, Capital Collateral Representative and Todd G. Scher, Chief Assistant CCR, Office of the Capital Collateral Representative, Tallahassee, for Petitioner/Appellant.
Robert A. Butterworth, Attorney General and Randall Sutton and Fariba N. Komeily, Assistant Attorneys General, Miami, for Respondent/Appellee.
PER CURIAM.
This case is before us on appeal from the trial court's denial of Jerry Leon Haliburton's motion to vacate his conviction and sentence pursuant to Florida Rule of Criminal Procedure 3.850. We also have before us a petition for writ of habeas corpus. We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const.
Haliburton was convicted of first-degree murder and burglary and sentenced to death for stabbing Don Bohannon thirty-one times during a burglary of Bohannon's home in West Palm Beach. On appeal, this Court concluded that statements Haliburton made to the police should have been suppressed and remanded the case for a new trial. See Haliburton v. State, 476 So.2d 192 (Fla.1985). On petition for certiorari, the United States Supreme Court vacated the reversal and remanded the case to this Court for reconsideration. Florida v. Haliburton, 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986). On remand, this Court held that police officers' failure to inform the defendant that an attorney was in the stationhouse and had asked to speak with him violated the due process provision of the Florida Constitution so as to vitiate the defendant's otherwise valid waiver of his right to an attorney and to require suppression of the statement made subsequent to the attorney's arrival. Haliburton v. State, 514 So.2d 1088 (Fla.1987).
On retrial, Haliburton was again convicted of burglary and first-degree murder. This Court affirmed the conviction and sentence on appeal. Haliburton v. State, 561 So.2d 248, 249 (Fla.1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991). In January 1992, Governor Chiles signed a death warrant scheduling Haliburton's execution for March 1992. In February 1992, Haliburton filed a rule 3.850 motion to vacate the judgment and sentence and a motion for a stay of execution. On March 12, 1992, a stay was granted.
In May 1993, Haliburton filed an amended motion for post-conviction relief and in December 1993, the court conducted an evidentiary hearing. The trial court denied Haliburton's motion for post-conviction relief and his subsequent motion for rehearing; this appeal followed together with a petition for habeas corpus.

Rule 3.850 Motion
Haliburton raises nine claims in the appeal of the denial of his 3.850 motion: (1) whether the successor judge properly ruled on Haliburton's motion for rehearing; (2) whether the state withheld exculpatory evidence and whether counsel's performance was deficient during the guilt phase; (3) whether counsel's performance was deficient at the penalty phase; (4) whether the jury instructions and aggravating circumstances were unconstitutionally vague and overbroad; (5) whether the state complied with Haliburton's chapter 119 requests; (6) whether counsel *469 was ineffective in advising Haliburton to waive speedy trial rights on the burglary charge; (7) whether counsel was ineffective regarding prosecutorial misconduct; (8) whether the jury instructions improperly shifted the burden to Haliburton; and (9) whether Haliburton was denied due process when the governor signed his death warrant before the two-year time limit for filing a motion for post-conviction relief expired. Claims (4) and (8) were not raised at trial and as such they are procedurally barred. Haliburton has conceded that claim (9) is moot since the trial court granted his stay of execution in March 1992.
First, we address Haliburton's contention that reversible error occurred when a successor judge impermissibly ruled on his motion for rehearing. Judge Lindsey presided over Haliburton's evidentiary hearing and denied his post-conviction motion; yet Judge Burk denied his motion for rehearing. Haliburton relies on Groover v. Walker, 88 So.2d 312 (Fla.1956), for the proposition that a successor judge may not correct any alleged legal errors in a final order issued by his predecessor. However, in Epperson v. Epperson, 101 So.2d 367 (Fla.1958), this Court explained:
We have the view that if the Chancellor who entered the final decree is available and willing to act on a petition for rehearing then the matter should not be acted upon by another judge. However, if the original Chancellor is unable by virtue of death, disability or other equivalent event, or is unwilling by reason of recusation of other cause to consider the rehearing petition, then a successor-Chancellor may consider it under such circumstances.
If the petition for rehearing is merely a reargument on points and facts considered by the original Chancellor, then the successor-Chancellor is without authority on such basis to reverse his predecessor. Such a petition for rehearing should be denied.
Id. at 368-69 (citation omitted). Although the Court advises the original judge to act on a petition for rehearing if possible, the Court does not prohibit the successor judge from denying the motion for rehearing as Judge Burk did in the instant case. The successor judge is only prohibited from reversing the judgment of the predecessor judge on the facts and argument considered by the predecessor. We do not know Judge Lindsey's reason for not acting on Haliburton's motion for rehearing; however, we find no error.
Haliburton next claims that either the state suppressed certain exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or his counsel was ineffective under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in failing to investigate, prepare, and present the evidence. Haliburton predicates his claim on the following assertions: The jury did not hear evidence which would have impeached the testimony of Haliburton's brother, Freddie, or Freddie's girlfriend, Sharon Williams; the state failed to disclose that Haliburton's fingerprint was not on the knife allegedly used during the assault on Sharon Williams, and the prosecutor intentionally misled the jury on this point when she argued that Haliburton was guilty because he "used a knife of opportunity ... when he assaulted Sharon Williams"; the jury did not hear the alibi testimony of Bernice Watson; and defense counsel failed to vigorously present evidence and make argument.
First, we will address the Brady claim. According to Haliburton, the state withheld evidence of Freddie's March 15, 1982, statement to police providing a different version of his brother's involvement in the murder; the state's assistance to Freddie in receiving lost gain time in the state prison system as a result of his cooperation and testimony at his brother's trial; the fingerprint results indicating that Haliburton's fingerprint was not on the knife Williams claimed Haliburton held to her throat when he allegedly raped her and made an inculpatory statement;[1] and the tape of Sergeant *470 Houser's interview with Haliburton's former cellmate, Curtis Horne, corroborating Haliburton's statement that he broke in to Bohannon's apartment and found a dead body.[2] In light of the record before us, we find that no Brady violation has occurred.
In Cruse v. State, 588 So.2d 983 (Fla.1991), this Court stated:
Not all evidence in the possession of the State must be disclosed to the defense under Brady. Evidence is only required to be disclosed if it is material and exculpatory. Evidence is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." In making this determination, the evidence must be considered in the context of the entire record.
Id. at 987 (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)).
The record supports the trial court's finding that the state turned over all documentation. There is no evidence that the March 15, 1982, statement was ever transcribed, and Haliburton concedes that he has seen a typed edited version of Houser's interview with Horne. Both Freddie and the prosecutor denied having a deal to induce Freddie's testimony, although the prosecutor assisted Freddie by writing to the Department of Corrections in order to restore the gain time he lost while waiting in jail for his brother's second trialFreddie testified to this fact during the second trial. As to the fingerprint report, it was retrieved from a separate file on the Sharon Williams rape charge which had been nolle prossed six years prior to Haliburton's second trial; however, the Palm Beach State Attorney's Office had an open files policy and Haliburton could have reviewed the rape file upon request. We find no failure on the state's part to disclose relevant evidence; thus, Haliburton's Brady claim must fail.
Haliburton argues that even if no Brady violation exists, defense counsel was ineffective under Strickland by not presenting the aforementioned evidence to the jury. In addition, Haliburton claims his counsel was ineffective for failing to present the alibi testimony of Bernice Watson and to vigorously present evidence and argument. In order to prevail on this claim, Haliburton must demonstrate that counsel's performance was deficient and that there is a reasonable probability that the outcome of the proceeding would have been different absent the deficient performance. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Bertolotti v. State, 534 So.2d 386, 390 (Fla.1988).
As noted above, Freddie testified relative to the prosecutor's assistance in restoring his lost gain time and evidence of the March 15 statement would have added marginally to Haliburton's defense given the volume of substantial impeachment evidence brought out by defense counsel against Freddie on cross-examination. The fingerprint report and Sergeant Houser's interview with Horne both raised issues Haliburton successfully argued to suppress, see supra notes 1-2, and counsel cannot be faulted for not risking the admission of further damaging evidence to bring forth impeachment of questionable value. There is no evidence to support Haliburton's allegation that the prosecutor hid the fingerprint evidence from the defense or that she intentionally misled the jury during her closing argument. We find that the trial judge properly denied Haliburton relief on these claims.
The record indicates that defense counsel was aware of Watson's proposed testimony,[3] but for tactical reasons chose not to use it because of evidence, including fingerprints, that Haliburton had been at the murder scene. Additionally, Watson's statement put Haliburton close to the address where the murder occurred and was contradicted by his family members in their depositions. Defense counsel's strategy was to convince *471 the jury that Freddie was not believable and that it was possible that Bohannon's ex-girlfriend had committed the murder. We cannot say that trial counsel's decision to forgo Watson's testimony was "so patently unreasonable that no competent attorney would have chosen it," Palmes v. Wainwright, 725 F.2d 1511, 1521 (11th Cir.1984)(quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir.1983)), nor can we say that the outcome of the proceeding would have been different if counsel had presented her testimony; thus we find no error.
Haliburton bases his contention that counsel failed to vigorously present evidence and argument on allegations that he failed to have a juror recused after commenting on the evidence during trial; that he failed to request a change of venue; that he failed to have the jury sequestered; and that he was unprepared to go forward with an opening statement. The trial court considered these claims and found that Haliburton failed to demonstrate that he was prejudiced by any acts or omissions of his attorney, and we find competent, substantial evidence to support this finding. Accordingly, we reject the foregoing claims and conclude that Haliburton has neither met the substandard performance nor the prejudice test from Strickland, and therefore is not entitled to relief.
Haliburton next argues that counsel's performance was deficient at the penalty phase. He asserts that counsel did not begin preparation for the penalty phase until after the guilt verdict, which resulted in his chosen mental health expert being unprepared to testify. We find that the record refutes Haliburton's contentions. At the evidentiary hearing, defense counsel, Nelson Bailey, testified that he had already done much of the preparation for the penalty phase during the first trial. He was aware that Haliburton had suffered physical and sexual abuse as a child and that he had a history of substance abuse. Bailey testified that although these factors would be considered mitigating in many cases, they were more harmful than helpful in the instant case. Bailey elected not to call the mental health expert, even though she could have testified that there was a strong indication of brain damage, because she would have also testified that Haliburton was an extremely dangerous person and that he was likely to kill again.
According to Bailey, testimony that Haliburton's emotional problems and deprived upbringing caused him to commit the crime or lessened his culpability would have conflicted with the picture of charity and pacifism painted by the other defense witnesses and would have been inconsistent with Haliburton's lingering doubt argument.
Bailey's penalty phase strategy was to humanize Haliburton by dwelling upon his close family ties and on the positive influence he had on his family and fellow inmates. Even though this strategy was unsuccessful in persuading the court and jury to sentence Haliburton to life imprisonment, we cannot conclude that he was ineffective. In light of the substantial, compelling aggravation found by the trial court, there is no reasonable probability that had the mental health expert testified, the outcome would have been different. Haliburton has shown neither deficiency nor prejudice, and the trial court properly denied this claim.
As his next issue, Haliburton asserts that the state failed to comply with Haliburton's chapter 119 public records requests. Haliburton alleges that the the West Palm Beach Police Department, the Palm Beach County Sheriff's Department, the office of the medical examiner, and the state attorney's office continue to withhold documents from him. The record supports the trial court's finding that the state has complied with Haliburton's requests for documents; thus we find no merit to this claim.
Next, we disagree that counsel was ineffective for advising Haliburton to waive his speedy trial rights on the burglary charge without informing him that the waiver would apply if he were eventually charged with Bohannon's murder. Counsel's request for a continuance was professionally reasonable conduct under the circumstances at the time. Haliburton had confessed to the burglary and the state had numerous witnesses, recorded witnesses' statements, recorded grand jury testimony, Haliburton's confession, *472 his fingerprints, blood, marijuana, and other objects belonging to Haliburton. It was reasonable for counsel to waive speedy trial rights and request the continuance in order to prepare for trial on the burglary charge when the grand jury had returned a no true bill on the murder charge two months earlier. Haliburton has shown neither deficient performance nor prejudice; thus we find no error.
Haliburton next asserts that the cumulative effect of the state's misconduct deprived him of a fair trial. He claims that references by the prosecutor in her opening statement and by Freddie to other court proceedings or Haliburton's appeal were improper. Haliburton also claims that the state suppressed the results of an exculpatory polygraph[4] examination and that the prosecutor created an unreasonable emotional response in one witness by presenting a gory photograph of the victim. We conclude that the trial court properly held that Haliburton's claims of prosecutorial misconduct are procedurally barred because they were raised and rejected by this Court on direct appeal.

Habeas Corpus
Haliburton raises five issues in his petition for writ of habeas corpus: (1) whether appellate counsel's ineffectiveness precluded reliable adversarial testing; (2) whether appellate counsel was ineffective for failing to raise a claim that the sentencing court precluded him from presenting mitigating witnesses; (3) whether appellate counsel failed to argue that the evidence was insufficient to prove guilt; (4) whether counsel was ineffective for not raising on appeal the court's refusal to permit counsel to argue that the grand jury would not indict Haliburton solely on physical evidence; and (5) whether inadequate limiting instructions on aggravating factors violated Haliburton's right to a reliable capital sentence. We will not address claim (5) which is procedurally barred.
In order to evaluate Haliburton's claim of ineffective assistance of appellate counsel,
this Court must determine "first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result." Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986), cert. denied, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987).
Ferguson v. Singletary, 632 So.2d 53, 57 (Fla.1993).
Haliburton first claims that because appellate counsel failed to act as a zealous advocate, he was deprived of his right to the effective assistance of counsel. We disagree with his assertion that appellate counsel's initial brief and oral argument were inadequate because they focused on one technical argument: Counsel convinced at least one member of this Court of the merits of his argument. See Haliburton, 561 So.2d at 252 (Barkett, J., concurring). Counsel cannot be deemed ineffective because he failed to persuade this Court to rule in Haliburton's favor. Swafford v. Dugger, 569 So.2d 1264, 1266 (Fla.1990).
We likewise find no merit to Haliburton's claim that appellate counsel was ineffective for failing to argue that two prison guards were not permitted to testify before the jury as to Haliburton's exemplary record while on Death Row. The record is clear that defense counsel abandoned his request that the prison guards be allowed to testify before the jury:
MR. BAILEY [defense counsel]: Here's what I'd like to do. I've got the two guards here. To be quite honest, I'm going to need primarilyfor the Court's information, because of the changes since the last time he was sentenced to death, *473 what I'd propose is that we wrap up here, have the guards testify on record, if you would permit, in advance as part of the sentencing proceeding for the Court's information without the jury present.
MS. BROOME [prosecutor]: No objection.
MR. BAILEY: Or, I can bring them back later.
MS. BROOME: I think it's sensless to bring them back.
THE COURT: Sure.
Counsel sought to have the guards testify before the judge and this request was honored. We find no error. Appellate counsel cannot be faulted for not raising this claim. Id.
We also find that if appellate counsel had challenged the sufficiency of the evidence regarding Haliburton's guilt, we would have found no merit to that claim. The evidence presented at trial sufficiently supports the convictions of burglary and first-degree murder; thus we find no merit to Haliburton's third issue.
Finally, Haliburton asserts that appellate counsel was ineffective for failing to argue on appeal that the trial court refused to permit trial counsel to argue in summation that the state failed to obtain an indictment against Haliburton based solely on physical evidence. According to Haliburton, without Freddie's testimony there was no case against him because the grand jury would not indict based solely on the fingerprint evidence placing Haliburton at Bohannon's apartment, and the jury needed to know the weakness of the state's case in evaluating Freddie's credibility. We find this to be a meritless claim because defense counsel was permitted to argue that Freddie had testified in front of the grand jury in order to get his brother charged with murder, and that from all the evidence, the state's case rested totally upon Freddie; therefore, no prejudice has been demonstrated.

Conclusion
We affirm the order denying the motion for post-conviction relief, and we deny the petition for habeas corpus.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] "Sharon Williams testified that [Haliburton] said to her, while holding a knife at her throat: `You don't think I'd do nothing to you. I do you just like I did that man, I kill you...." Haliburton, 561 So.2d at 251. At trial, defense counsel obtained an order in limine preventing any mention of the alleged rape.
[2] Haliburton's confession to breaking into Bohannon's apartment and seeing the body was suppressed. See Haliburton v. State, 476 So.2d 192 (Fla.1985).
[3] Bernice Watson would have testified that Haliburton was with her the night of the murder except for a brief time when he went out to get cigarettes.
[4] The Capital Collateral Representative's investigator testified that a stamp on the evidence report contained in the files turned over by the West Palm Beach Police Department stated that the polygraph had been destroyed.