Johnny WILLIAMSON, Petitioner-Appellant,

v.

Michael W. MOORE, Respondent-Appellee.

No. 98-2679.

United States Court of Appeals,

Eleventh Circuit.

Aug. 8, 2000.

Appeal from the United States District Court for the Northern District of Florida.(No. 95-10056-CV-MMP), Maurice M. Paul, Judge.

Before EDMONDSON, BIRCH and DUBINA, Circuit Judges.

EDMONDSON, Circuit Judge:

## *BACKGROUND*

Petitioner, Johnny Williamson, was convicted in a Florida court of the first-degree murder of Daniel Drew and the unlawful possession of a knife while an inmate. The jury recommended a death sentence; the judge, after finding three aggravating factors and no mitigating factors, imposed a death sentence. Petitioner's convictions and sentence were affirmed on direct appeal. *See Williamson v. State,* 511 So.2d 289 (Fla.1987). Petitioner sought post-conviction relief in state court, but the state trial court and the Florida Supreme Court denied relief. *See Williamson v. Dugger,* 651 So.2d 84 (Fla.1994).

Petitioner next sought habeas corpus relief in federal district court. The district court relied upon the Florida Supreme Court's summary of the facts:

> While inmates at Cross City Correctional Institution, [Petitioner] and his "partner" Omer Williamson (no relation) were selling marijuana for Daniel Drew, also an inmate at that facility. According to Omer Williamson's testimony, Omer owed Drew $15 in connection with a marijuana sale. Omer decided not to pay Drew because Omer believed Drew had been lying to him. When Omer told the appellant that he did not intend to repay Drew, [Petitioner] said that they would have to kill Drew because Drew was "a country boy" who would stab Omer if he didn't pay his debt. "Chickenhead" Robertson, another inmate at the facility and co-defendant in [Petitioner]'s trial, learned of the plan to kill Drew and offered to look for a knife. When Robertson and [Petitioner] were unable to find a knife, Omer went to his cell and got a metal rod from the sink which Drew had previously sharpened to a point. While Robertson acted as a lookout, [Petitioner] and Omer went to the maintenance shop building where Drew was working. [Petitioner] asked an inmate working at the

shop to send Drew outside. When Drew came out Omer stood behind him, while [Petitioner] gave him $5 so that it would look like they had given Drew less than Omer owed him and he had gotten upset and pulled a knife on them. [Petitioner] then told Drew that Omer was having trouble getting the rest of the money and needed a knife to collect. Drew had apparently made a knife for [Petitioner] and gave it to him at that point in the conversation. On [Petitioner]'s signal, Omer grabbed Drew by the throat from behind. [Petitioner] stabbed Drew and a struggle ensued, with Omer throwing Drew to the ground, kicking him in the head several times. [Petitioner] continued to stab Drew with the knife. When Omer became "grossed out" he gave [Petitioner] the rod and left. [Petitioner] then straddled Drew stabbing him repeatedly with the knife and metal rod. After leaving Drew, [Petitioner] then returned the rod to Omer and gave the knife to Robertson. Omer returned the rod to the sink in his cell and Robertson put the knife in a cast he was wearing, eventually burying it underneath a tree where it was later found.

*Williamson,* 511 So.2d at 290. The district court, in a twenty-nine page opinion, denied Petitioner's request for habeas corpus relief. Petitioner appeals.[1]

## *DISCUSSION*

### I. Ineffective Assistance of Counsel

Petitioner argues that trial counsel was ineffective at the guilt phase for three main reasons: (1) counsel failed to investigate and to present a self-defense argument, (2) counsel failed to challenge the state's case on premeditation, and (3) counsel failed to cross-examine witnesses adequately. We review Petitioner's claim of ineffective assistance de novo. *Williams v. Head,* 185 F.3d 1223, 1226-27 (11th Cir.1999).

To prevail on a claim of ineffective assistance, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Petitioner first argues that trial counsel's tactic not to present an argument of self-defense was deficient because it was not an informed decision made pursuant to an investigation. But, no absolute duty

---

[1]On appeal, Petitioner has raised nine issues: (1) whether counsel was ineffective during the guilt phase of the trial, (2) whether there was a *Brady* violation, (3) whether there was a *Giglio* violation, (4) whether Petitioner was unconstitutionally denied an instruction on self-defense and whether appellate counsel was ineffective for failing to raise this issue on appeal, (5) whether counsel was ineffective during the sentencing phase of the trial, (6) whether newly discovered evidence entitles Petitioner to a new trial, (7) whether Petitioner was prejudiced at sentencing by the use of nonstatutory aggravating factors, (8) whether it was error for the sentencing jury to have been instructed on the "cold, calculated, and premeditated" aggravating factor, and (9) whether the state's closing argument warranted a reversal. We conclude that issues 3, 4, 5, 6, 7, 8 and 9 lack serious merit and warrant no discussion. They were addressed (with no reversible error) in the district court's opinion.

exists to investigate a particular line of defense. Counsel's decision not to conduct an investigation need only be reasonable. *See Strickland,* 104 S.Ct. at 2066 ("[C]ounsel has a duty ... to make a reasonable decision that makes particular investigations unnecessary."). This Circuit has refused to conclude that tactics "can be considered reasonable only if they are preceded by a 'thorough investigation' ". *Williams,* 185 F.3d at 1236-37.

"The reasonableness of a counsel's performance is an objective inquiry." *See Chandler v. U.S.,* --- F.3d ---- (11th Cir.2000)(en banc); *see also Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986) (noting that counsel's performance did not fall below "an objective standard of reasonableness"). The inquiry focuses on whether a reasonable attorney could have acted in the same manner as trial counsel did act at the trial. *See Chandler,* --- F.3d at ----; *see also Waters v. Thomas,* 46 F.3d 1506, 1512 (11th Cir.1995) (en banc)("The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial ...").

A reasonable attorney—in these circumstances—could have decided not to pursue a theory of self defense. First, in trial counsel's experience, self-defense arguments did not have a high rate of success in that jurisdiction.

Second, while two witnesses could have testified that the victim started the fight, both witnesses would also have testified that they saw Petitioner first disarm the victim, thereby undercutting a finding of self-defense for the homicide. *See Pressley v. State,* 395 So.2d 1175, 1177 (Fla. 3rd DCA 1981) ("[A] person may not use violence upon his assailant, after the assailant is no longer a threat and all danger is clearly past, and thereby claim to be acting in self-defense.").

Third, a reasonable attorney could have concluded that a theory of self-defense was inconsistent with Petitioner's own description of the killing. The reasonableness of an attorney's acts can depend upon "information supplied by the defendant" and "the defendant's own statements or actions." *Strickland,* 104 S.Ct. at 2066. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations

would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.; see also Chandler,* --- F.3d at ----. Therefore, we cannot say that counsel's approach was unreasonable.[2]

Petitioner next argues that trial counsel unreasonably failed to interview or to depose witnesses who would have provided testimony to support a theory of reduced intent. In particular, Petitioner points to the testimony of Jack Green, Michael Haager, Charlie Jones, and Paul Williams.

Despite some beneficial statements these witnesses may have been able to provide on reduced intent, serious problems existed with their testimony. Green, Williams and Jones had made earlier statements which would have supported a finding of premeditation or a homicide that was not in self-defense or otherwise justified.[3] Had trial counsel allowed them to testify at Petitioner's trial, this conflicting hurtful evidence most likely would also have been brought out.

Furthermore, Green had made inconsistent statements about whether or not he had witnessed the murder. He also admitted to having been convicted of at least seven crimes involving dishonesty. Because a reasonable attorney could have decided not to call non-credible witnesses, counsel's performance was therefore not unreasonable. *See Chandler,* --- F.3d at ----; *see also Sinclair v. Wainwright,* 814 F.2d 1516, 1521 (11th Cir.1987) (defense counsel not ineffective for failing to call witness whose credibility was questionable).

In addition, Green, Haager and Williams were unavailable to testify at the trial. Counsel had unsuccessfully tried to locate Green who had been released from custody before Petitioner's trial. Haager and Williams had escaped from custody after the murder and did not contact defense counsel until after Petitioner

---

[2] Although trial counsel's subjective reasoning is not critical to rejecting an ineffective-assistance-of-counsel claim, the state trial court found that trial counsel did in fact base his decision to avoid a theory of self-defense on these three reasons.

[3] Green made statements about Petitioner's disposal of Petitioner's bloody clothes which would have provided evidence of guilty knowledge. Williams would have testified that Drew was making a knife for Petitioner and part of Petitioner's plan was to obtain the knife from Drew and use it to kill Drew. Jones made a previous statement that Petitioner had secured a knife the night before from Bailey and had announced that he did not intend to pay Drew the money that Drew was owed.

was convicted. Counsel cannot be said to be ineffective for failing to call an unavailable witness. *See Elledge v. Dugger,* 823 F.2d 1439, 1446-48, *modified on other grounds,* 833 F.2d 250 (11th Cir.1987).

Petitioner also contends that trial counsel did not properly challenge the state's case through cross-examination. Petitioner argues that inconsistencies existed between the trial testimony and interviews of certain witnesses and argues that, had counsel prepared better, counsel would have been able to impeach these witnesses and undercut the element of premeditation. Petitioner, in his state 3.850 petition, presented this issue to the state court and received a full evidentiary hearing. Trial counsel was called at the hearing as a witness, but he was not questioned about his preparation or about cross-examination techniques. Also, none of the witnesses who Williamson had listed as relevant to this issue were called at the hearing, even though they were available. The state court found that Williamson "fail[ed] to present anything of substance to support this claim" and, accordingly, rejected the claim. The Florida Supreme Court affirmed. *See Williamson,* 651 So.2d at 86-87.

The district court found this claim to be procedurally barred because Petitioner had failed to provide the state courts with an adequate opportunity to address the issue. The district court relied on the Supreme Court's decision in *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). In *Picard,* the defendant, unlike Petitioner, "presented all the facts" yet failed to raise the specific legal issue in state court. *Id.* at 513. Because the legal theory (upon which he relied in federal court) "was never brought to the attention of the state courts", the Supreme Court concluded that the defendant had failed to provide the state court an adequate opportunity to address the issue. *See id.* at 513.

In this case, we question whether Petitioner failed to exhaust his state law remedy. *See generally Rodriguez v. Scillia,* 193 F.3d 913, 916 (7th Cir.1999) (discussing considerations for whether or not state remedies have been exhausted); *Demarest v. Price,* 130 F.3d 922, 932 (10th Cir.1997) (evidence presented to a federal court that places the claim "in a significantly different legal posture must first be presented to state courts"). We are inclined to think he just failed to prove the claim he advanced in his pleadings. A state court finding that a claim is unsubstantiated is entitled to a presumption of correctness in a federal court. *See Buck*

*v. Green,* 874 F.2d 1578, 1581 (11th Cir.1989) ("Unsubstantiated means not proved" which amounts to a finding of fact by the state court that is presumed correct.)  Because Petitioner did not prove that counsel's performance on cross-examination was deficient and did not demonstrate prejudice, federal relief was correctly denied on this claim, *see Strickland,* 104 S.Ct. at 2064, even if Petitioner did exhaust the state remedy.

II. *Brady Claim*

As evidence of a *Brady* violation, Petitioner points to two kinds of materials:  (1) written notations of the prosecutor's mental impressions of the case and (2) non-verbatim, non-adopted witness statements taken by the prosecutor.  Petitioner contends that, if the documents had been turned over, he would have been able to impeach the witnesses and, thereby, to challenge the government's case.[4]

First, the state argues that the prosecutor's mental impressions constitute attorney work product, which is not discoverable under *Brady*.  "Neither the Supreme Court nor this court has decided whether *Brady* requires a prosecutor to turn over his work product."  *Mincey v. Head,* 206 F.3d 1106, 1133, n. 63 (11th Cir.2000).

In this case, we need not decide whether *Brady* never reaches attorney work product.  Given the argument before us, we focus our inquiry on whether opinion work product of the kind in this case may be discovered under *Brady* for impeachment purposes.  "Opinion work product" encompasses all material that reflects an attorney's mental impressions, conclusions, opinions, or legal theories.  *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947).

We recognize that compelling reasons exist against a rule that requires opinion work product to be turned over to the opposing side.  For example, if opinion work product were accessible by opposing counsel "much of what is now put down in writing would remain unwritten."  *Id.* at 393.  In addition, "[i]nefficiency,

---

[4]Petitioner also points to these documents as evidence of a *Giglio* violation.  He argues that the state deliberately and knowingly presented and used false evidence and intentionally deceived the jury, the trial court and defense counsel.  The state trial court found that "[t]here was absolutely no evidence to support these claims."  And the district court rejected this claim.  We also conclude that Petitioner's argument is without merit and accordingly deny this claim.  *See supra* footnote 1.

unfairness and sharp practices ... in the preparation of cases for trial" would result. *Id.* at 394.[5]

While opinion work product enjoys almost absolute immunity, extraordinary circumstances may exist that justify a departure from this protection. *See Cox v. Administrator United States Steel & Carnegie,* 17 F.3d 1386, 1422 (11th Cir.1994) ("The crime-fraud exception presents one of the rare and extraordinary circumstances in which opinion work product is discoverable."). But given the facts found on the *Giglio* claim, this case does not present such extraordinary circumstances.

Second, the state argues that failing to turn over the non-verbatim, non-adopted witness statements did not constitute a *Brady* violation. To demonstrate a *Brady* violation Petitioner must prove (1) that the evidence was favorable to him because it was exculpatory or impeaching; (2) that the evidence was suppressed by the State, either willfully or inadvertently; and (3) that the evidence was material and, therefore, that the failure to disclose it was prejudicial. *See Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).

These non-verbatim, non-adopted witness statements were not admissible at trial as impeachment evidence. *See Marrero v. State,* 478 So.2d 1155, 1156 n. 1 (Fla. 3rd DCA 1985); *see also Hickman,* 67 S.Ct. at 394 (transcribed notes of a witness interview contain a real risk of inaccuracy and untrustworthiness); *United States v. Nixon,* 881 F.2d 1305, 1310 (5th Cir.1989) ("[T]he absence of some of the trial testimony from the report was not necessarily a reflection on the credibility of the witness.").

Therefore, for prejudice to exist, we must find that the evidence—although itself inadmissible—would have led the defense to some admissible evidence. *See Bradley v. Nagle,* 212 F.3d 559, 567 (11th Cir.2000). Petitioner never has pointed out what admissible impeachment or exculpatory evidence would have been discovered if these documents had been turned over. "A court cannot speculate as to what evidence the defense might have found if the information had been disclosed." *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir.1999). We conclude that the prosecutor's notes of witness statements could not have led

---

[5]While *Hickman* involved a civil proceeding, we believe that the underlying policies articulated by the Court are inherent in any kind of judicial proceeding.

the defense to impeachment or exculpatory evidence.

For the reasons set out in the district court's order and opinion, as well as those set out here, the judgment of the district court is AFFIRMED.


BIRCH, Circuit Judge, concurs in the judgment only.