Jerry Leon **HALIBURTON**, Petitioner,

v.

**SECRETARY FOR THE DEPART-MENT OF CORRECTIONS,** Respondent.

No. 98–8225–CIV.

United States District Court, S.D. Florida, Miami Division.

Sept. 10, 2001.

Todd Gerald Scher, Ft. Lauderdale, FL, for Petitioner.

Fariba Nora Komeily, Randall Avery Sutton, Office of the Attorney General Department of Legal Affairs, Miami, FL, for Respondent.

### *ORDER DENYING PETITION*

MORENO, District Judge.

Jerry Haliburton, a state prisoner sentenced to death, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 alleging twenty claims that would entitle him to relief. The Honorable Daniel T.K. Hurley, the Judge to whom the case was originally assigned, denied all but two of the claims (Claims 1 and 3) in a thorough eighty-nine page opinion. Judge Hurley ordered an evidentiary hearing on Claims 1 and 3, subsequently recused and this Court was assigned the case. Pursuant to Judge Hurley's order, this Court proceeded with a three-day evidentiary hearing, a complete transcript of which was ultimately filed on June 4, 2001. The Court denies the petition on all claims, adopting Judge Hurley's analysis on all claims except those on which an evidentiary hearing was held. For the reasons explained below, after conducting an evidentiary hearing, the Court denies the petition on Claim 1, alleging suppression of favorable evidence by the prosecutor and ineffective assistance of trial counsel at the guilt phase, as well as Claim 3, claiming ineffective assistance of counsel at the sentencing phase of the trial.

### *Background*

In 1982, the Grand Jury in Palm Beach County, Florida indicted the petitioner for the murder of Donald Bohannon during a burglary of his home. The petitioner was convicted and sentenced to death in 1983, but the conviction was reversed by the Florida Supreme Court holding that the petitioner's statement to the police should have been excluded. *Haliburton v. State,* 476 So.2d 192 (Fla.1985); *Haliburton v. State,* 514 So.2d 1088 (Fla.1987). Petitioner was tried a second time, convicted and sentenced to death. His conviction was affirmed. *Haliburton v. State,* 561 So.2d

248 (Fla.1990). The Florida Supreme Court summarized the case as follows:

> In the early morning of August 9, 1981, appellant burglarized the home of Donald Bohannon and attacked Bohannon with a knife as he slept. Bohannon died as a result of thirty-one stab wounds over his neck, chest, arms, and scrotum. After the murder appellant told his brother, Freddy, that he had killed Bohannon just to see if he could kill another human being. Finding Haliburton guilty of first-degree murder, the jury recommended the death penalty by a nine-to-three vote. The trial judge found four aggravating factors and no statutory mitigating factors. The court considered the nonstatutory mitigating circumstances placed into evidence, found them insufficient to outweigh the aggravating circumstances, and imposed the death sentence.

*Id.* at 249–50.

In 1992, Governor Lawton Chiles signed a death warrant, but a stay was granted in order for the trial court to consider the petitioner's state post-conviction motion to vacate his judgment and sentence pursuant to Fla.R.Crim.P. 3.850. After conducting an evidentiary hearing in which trial counsel testified, the state trial court denied the post-conviction motion to vacate. The Florida Supreme Court affirmed the denial by the state trial court finding that the petitioner failed on his claims concerning the suppression of exculpatory evidence and ineffective assistance of trial or appellate counsel. *Haliburton v. Singletary,* 691 So.2d 466 (Fla.1997). These two state post-conviction claims, withholding exculpatory evidence and ineffective assistance of counsel, involve the same claims on which this Court held an evidentiary hearing, in accordance with Judge Hurley's order pursuant to Haliburton's federal petition for habeas relief.

## Federal Habeas Review and the Preliminary Order

Prior to his recusal, Judge Hurley in his August 27, 1999 Preliminary Order on Petition for Writ of Habeas Corpus detailed the reasons why eighteen of the twenty claims raised on Haliburton's petition should be rejected. Since the date of Judge Hurley's order, the United States Supreme Court in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) clarified the nature of review as set out in 28 U.S.C. 2254(d). Habeas relief from a state court judgment may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ In *Williams,* the United States Supreme Court rejected the "reasonable jurist" standard adopted by the Eleventh Circuit in *Neelley v. Nagle,* 138 F.3d 917 (11th Cir.1998). Instead the *Williams* Court determined, "Under the 'reasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413, 120 S.Ct. at 1523. A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."

*Id.* at 411, 120 S.Ct at 1522. The state court's application must also be unreasonable. *Id.*

This Court sees no reason to disturb Judge Hurley's August 27, 1999 order with its extensive findings or conclusions dismissing all but two of the twenty claims raised in the federal petition. In light of *Williams* and its clear directive that a state court decision correctly applying federal law not be disturbed by a federal habeas court unless unreasonable, it may not have been necessary to conduct an evidentiary hearing on claims 1 and 3. Nevertheless, the Court conduced a hearing pursuant to Judge Hurley's order (which predated *Williams* by nearly one year), and as a result will discuss both Claims 1 and 3.

### Analysis

Claim 1 pertains to the guilt phase of trial and contains two components. The first of these involves alleged violations of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (dealing with the suppression of exculpatory evidence), while the second component asserts that trial counsel rendered ineffective assistance of counsel. Claim 3 alleges that counsel rendered ineffective assistance at the guilt phase of his capital case following his conviction.

### A. Ineffective Assistance of Counsel Standard

■ In order for a habeas petitioner to prevail on a claim of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that

the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Stated differently, a habeas petitioner must show that "(1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense." *Grayson v. Thompson,* 257 F.3d 1194, 1215 (11th Cir.2001). In a capital case, this two-part test applies to claims of ineffective assistance of counsel both at the guilt phase of the trial and the sentencing phase. *Id.* (citing *Collier v. Turpin,* 177 F.3d 1184, 1198 (11th Cir.1999); *Strickland,* 466 U.S. at 686–87, 104 S.Ct. 2052, 80 L.Ed.2d 674).

■ To establish that counsel's performance was ineffective, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Darden v. Wainwright,* 477 U.S. 168, 184, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986); *Strickland,* 466 U.S. at 668, 104 S.Ct. at 2065. The Eleventh Circuit has established that review of a "lawyer's conduct under the 'performance' prong [is] with considerable deference, giving lawyers the benefit of the doubt for 'heat of the battle' tactical decisions." *Johnson v. Alabama,* 256 F.3d 1156, 1176 (11th Cir. 2001) (citing *Mills v. Singletary,* 161 F.3d 1273, 1285–6 (11th Cir.1998)); *see also Waters v. Thomas,* 46 F.3d 1506, 1518 (11th Cir.1995) ("The test for ineffectiveness is not whether counsel could have done more; perfection is not required.... Nor is the test whether the best criminal defense attorneys might have done more. Instead, the test is whether some reasonable attorney could have acted, in the circumstances, as these two did—whether what they did was within the 'wide range of reasonable professional assistance.'").

■ Counsel's performance must be reasonable under the prevailing professional norms. *Chandler v. U.S.,* 218 F.3d 1305, 1313 (11th Cir.2000). In order to show that counsel's performance was unreasonable, the petitioner must establish that no competent counsel would have taken the action that his counsel did take. *Grayson,* 257 F.3d at 1216. The Eleventh Circuit has also made clear that an attorney's performance is to be evaluated from his perspective at the time, rather than through the prism of hindsight. *Id.* (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674). The issue to be determined is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled. *Grayson,* 257 F.3d at 1216. Given this strong presumption in favor of competence, "the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Johnson,* 256 F.3d at 1176.

■ The "prejudice" prong is also difficult to meet. *Id.* at 1177. To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. A finding of prejudice requires proof of " 'unprofessional errors' so egregious 'that the trial was rendered unfair and the verdict rendered suspect.' " *Johnson,* 256 F.3d at 1177 (quoting *Eddmonds v. Peters,* 93 F.3d 1307, 1313 (7th Cir. 1996)); *Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986).

## B. Claim 1

As set out in Judge Hurley's Preliminary Order:

In Claim 1, petitioner asserts that the guilt phase of the trial was unconstitutional for lack of adversarial testing. The gist of this claim is that the adversarial testing contemplated by the Constitution was not realized due to general misconduct by the prosecutor, including suppression of evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or due to defense counsel's failure to investigate, prepare and present evidence in violation of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Haliburton v. Singletary, No. 98–8225–CIV–HURLEY, slip op. at 34 (S.D.Fla. August 27, 1999).

Judge Hurley found that the Florida courts' determination that there was no violation of the *Brady* rule, requiring disclosure of evidence favorable to the defense, was reasonable, except for the issue of an alleged recorded statement attributed to the petitioner's brother, Freddie Haliburton, who testified at trial against the petitioner. It was, therefore, left to this Court to determine whether this alleged statement by Freddie Haliburton constituted a *Brady* violation and a basis for finding that trial counsel's performance was ineffective.

Judge Stanley Marcus, writing for the Eleventh Circuit panel including Judges Tjoflat and Black, analyzed a *Brady* claim in an appeal of a request for a writ of habeas corpus by a prisoner sentenced to death in *Johnson.* The *Johnson* court held:

> The *Brady* legal frame work is well-settled. "There are three essential components of a true *Brady* violation: the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). Thus, to prove a *Brady* claim, a party must show: "(1) suppression by the prosecution (2) of exculpatory evidence (3) material to the issues at trial or sentencing." *Kennedy v. Herring,* 54 F.3d 678, 682 (11th Cir.1995). Included in the materiality prong of *Brady* analysis is a requirement that the petitioner make a showing of actual prejudice. *See id.* To demonstrate prejudice, the petitioner must "convince us that there is a reasonable probability that the result of the trial would have been different if the [allegedly suppressed items] had been disclosed to the defense. In other words, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *High v. Head,* 209 F.3d 1257, 1267 (11th Cir.2000) (citations and internal quotation marks omitted); *see also Strickler,* 527 U.S. at 289–90, 119 S.Ct. at 1952 (" 'the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence' ") (citation omitted).

Johnson v. Alabama, 256 F.3d 1156, 1189 (11th Cir.2001).

The petitioner claimed in both his state post-conviction motion and his federal habeas petition that his own brother, Freddie Haliburton, made a statement to the prosecutor (Assistant State Attorney, now Circuit Court Judge, Paul Moyle) on March 12 or 15, 1982 which was inconsistent with Freddie Haliburton's Grand Jury testimony and his testimony at both trials. The Florida courts concluded that there was no evidence of such recorded statement.

However, at the federal evidentiary hearing the state conceded that there probably was a recorded statement, but that such could not be located now. In any event, the State argues that the evidence allows for the reasonable inference that such statement to then prosecutor Moyle was consistent, if not identical, to what witness Freddie Haliburton had stated before the Grand Jury, at the first trial and eventually at the second trial.

The State relies on trial counsel's recollection that the statements by Freddie Haliburton were all the same. Trial counsel, Nelson Bailey, now a Florida State Circuit Judge, testified at the state evidentiary hearing and provided written answers, under oath, to interrogatories propounded by both the state and the petitioner in this federal proceeding. Petitioner argues that the state testimony by Bailey and his sworn written responses are insufficient and that this Court should reconvene an evidentiary hearing and hear Judge Bailey's testimony. The Court finds that Judge Bailey's testimony and sworn written responses, together with the testimony of the other witnesses at the federal hearing, provide a sufficient evidentiary basis for the Court's ruling.

The *Brady* claim revolves around the statement under oath made by Freddie Haliburton to former Assistant State Attorney Paul Moyle. Judge Moyle was at the time of the Haliburton case the chief homicide prosecutor in Palm Beach County. He specifically recalls the "break" in the case when Freddie Haliburton provided a statement to the police implicating his brother Jerry Haliburton. Freddie Haliburton became upset at his brother Jerry when he learned his girlfriend's allegation that Jerry raped her.

Judge Moyle remembers the formal statement being taken and ordering the transcript. Moyle further testified, credibly, that he turned over the file to the trial prosecutor Richard Barkin. Prosecutor Barkin testified that he never found the particular statement. However, Barkin's credible testimony, as well as Judge Bailey's sworn responses to the interrogatories show that the understanding of all counsel was that Freddie Haliburton's statement to Moyle was basically the same as his statement to the Grand Jury, as well as his testimony at the first trial.

Judge Bailey, as Jerry Haliburton's trial counsel, remembers that all of Freddie Haliburton's statements were consistent and helped the prosecutors more than the defense. Bailey, therefore, "did not want to delve into it in detail in the presence of the jury or trial judge." Bailey's cross-examination of Freddie Haliburton "related more to his motives for testifying against his brother than it did to the specifics of his testimony against his brother." (Judge Bailey's Sworn Responses of September 28, 2000.) Freddie Haliburton testified that he did give a statement to the prosecutor (presumably Moyle) in the presence of a court reporter, but when questioned at the federal evidentiary hearing about the details of the statement he invoked his Fifth Amendment privilege and refused to answer further questions.

 Under the evidence presented, the Court finds that a statement was taken either March 12 or 15, 1982, from Freddie Haliburton. The Court further finds in light of all the evidence that such statement, although taken by a court reporter, if transcribed, was no different from other statements made by Haliburton under oath to the Grand Jury and at the testimony at both trials. The fact that, with the passage of almost twenty years, the statement cannot be located does not make it a "favorable" or "exculpatory" statement. Quite the contrary, the statement, according to all witnesses, implicated Jerry Haliburton with Bohannon's brutal murder.

Thus, even if this Court found unreasonable the Florida court's factual finding that the "record supports the trial court's finding that the state turned over all documentation," *Haliburton v. Singletary,* 691 So.2d 466, 470 (Fla.1997), such finding would not require new trial pursuant to *Brady* as petitioner has not met his burden of showing that the evidence was exculpatory. *See Johnson,* 256 F.3d at 1189.

◼ In addition to failing to meet its burden of showing the statement by Freddie Haliburton is favorable or exculpatory, petitioner has failed to show prejudice from the allegedly undisclosed additional, consistent statement by Freddie Haliburton. *See Johnson,* 256 F.3d at 1189 (requiring that the favorable evidence put the case in a different light and undermine confidence in the verdict); *High,* 209 F.3d 1257, 1267. Thus, his *Brady* violation claim is denied.

◼ Because the Court finds no *Brady* violation, it also rejects the claim that trial counsel was ineffective for not obtaining or otherwise using the March 1982 statement in petitioner's second trial. Petitioner has been unable to meet his heavy burden of persuasion to show that Judge Bailey's performance was unreasonable under the prevailing professional norms. *Chandler,* 218 F.3d at 1313. Furthermore, petitioner has failed to demonstrate prejudice "given the volume of substantial impeachment evidence brought out by defense counsel against Freddie Haliburton on cross-examination." *Haliburton v. Singletary,* 691 So.2d at 470.[1]

### C. Claim 3

◼ The petitioner alleges that Judge Bailey, acting as his court appointed counsel, rendered ineffective assistance of counsel at the sentencing phase of his trial. The Eleventh Circuit has held that *Strickland's* two-part test applies to claims of ineffective assistance of counsel during the sentencing phase of a capital case "because a 'capital sentencing proceeding ... is sufficiently like a trial in its adversarial format and in the existence of standards for decision ... that counsel's role in the proceeding is comparable to counsel's role at trial—to ensure that the adversarial testing process works to produce a just result under the standards governing decision.'" *Collier,* 177 F.3d at 1198 (quoting *Strickland,* 466 U.S. at 686–87, 104 S.Ct. 2052, 80 L.Ed.2d 674). In his petition, Haliburton claims that trial counsel failed to present mitigating evidence including a mental health counselor. As noted in Judge Hurley's Preliminary Order, the Florida state courts discussed the identical claim. The Florida Supreme Court held that:

> Haliburton next argues that counsel's performance was deficient at the penalty phase. He asserts that counsel did not begin preparation for the penalty phase until after the guilt verdict, which resulted in his chosen mental health expert being unprepared to testify. We find that the record refutes Haliburton's contentions. At the evidentiary hearing, defense counsel, Nelson Bailey, testified that he had already done much of the preparation for the penalty phase during the first trial. He was aware that Haliburton had suffered physical and sexual abuse as a child and that he had a history of substance abuse. Bailey testified that although these factors would be considered mitigating in many cases, they were more harmful than helpful in the instant case. Bailey elected not to call the mental health expert, even

---

1. The Eleventh Circuit has recently decided that even where a petitioner has shown sufficient errors by counsel to rise to the level of constitutionally deficient performance at the guilt phase, any showing of prejudice would be defeated where the evidence of guilt is substantial. *Fugate v. Head,* 261 F.3d 1206, 1224 (11th Cir.2001).

though she could have testified that there was a strong indication of brain damage, because she would have also testified that Haliburton was an extremely dangerous person and that he was likely to kill again.

According to Bailey, testimony that Haliburton's emotional problems and deprived upbringing caused him to commit the crime or lessened his culpability would have conflicted with the picture of charity and pacifism painted by the other defense witnesses and would have been inconsistent with Haliburton's lingering doubt argument.

Bailey's penalty phase strategy was to humanize Haliburton by dwelling upon his close family ties and on the positive influence he had on his family and fellow inmates. Even though this strategy was unsuccessful in persuading the court and jury to sentence Haliburton to life imprisonment, we cannot conclude that he was ineffective. In light of the substantial, compelling aggravation found by the trial court, there is no reasonable probability that had the mental health expert testified, the outcome would have been different. Haliburton has shown neither deficiency nor prejudice, and the trial court properly denied this claim. *Haliburton v. Singletary*, 691 So.2d at 471.

This Court, after conducting an evidentiary hearing respectfully disagrees with Judge Hurley's pre-hearing determination that the state court's deference to Bailey's strategic decision not to call the mental health expert was misplaced. The Eleventh Circuit has held consistently that the test for evaluating ineffective assistance claims is whether some reasonable attorney could have acted, in the circumstances, as this attorney did. *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir.1995). Counsel needed only to have acted within the wide range of reasonable professional assistance. *Johnson*, 256 F.3d at 1176; *Waters*, 46 F.3d at 1518. The Eleventh Cir-

cuit has cautioned, "In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time. [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Chandler v. U.S.*, 218 F.3d 1305, 1313–16 (11th Cir.2000). The issue to be determined is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled. *Grayson*, 257 F.3d 1194, 1216 (11th Cir.2001).

Irrespective of state law precluding evidence from the mental health expert of petitioner's future dangerousness, trial counsel's decision not to present that particular expert to the jury, and perhaps more importantly the sentencing judge, was reasonable. Petitioner fails to meet his high burden of proving that his trial counsel performed unreasonably by pursuing that strategy. As noted above, *Johnson* reiterates the rule that a court must evaluate defense counsel's actions in the context of the entire trial. *Johnson*, 256 F.3d at 1176–77. This Court, independent of the state court's reasonable and constitutional findings, concludes that counsel's strategic decision was, at the time, reasonable. In any event, the mental health evidence was not significant enough to undermine the Court's confidence in the death sentence. *See Cade v. Haley*, 222 F.3d 1298, 1305 (11th Cir.2000) (holding that even though expert and lay testimony regarding petitioner's mental health may have helped petitioner receive a lesser sentence, the "missing" testimony did not undermine the court's confidence in the outcome). The jury deliberated only forty-five minutes, despite hearing from ten witnesses at the penalty phase. At the trial,

the petitioner's mother, four brothers [2], a niece and a former teacher testified on mitigating factors. Defense counsel also called the medical examiner for the proposition that the death of the victim was a spontaneous, frenzied killing rather than a premeditated, planned act. The petitioner himself testified as to his innocence, that he was religious and a model prisoner. In addition, defense counsel called state correctional officers to testify before the judge prior to the judge's decision to sentence the petitioner to death.

Calling all of these witnesses, while purposefully failing to call a mental health expert to introduce mental health evidence that would have been damaging in part does not render counsel's performance below constitutional standards or show that the petitioner suffered prejudice as a result. As the *Grayson* panel and the *en banc* court in *Chandler* held, there is a strong presumption that counsel was effective and the petitioner bears a heavy burden to overcome it. Even though some other reasonable course may have existed, it is immaterial as long as the course chosen was not unreasonable. *Chandler*, 218 F.3d at 1313, *see also Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir.2000) (finding as reasonable an attorney's failure to pursue a theory of self-defense by calling non-credible witnesses); *Cade v. Haley*, 222 F.3d 1298 (11th Cir.2000) (no clear error in finding that the petitioner was not prejudiced by trial counsel's alleged failure to investigate and present expert testimony of mental illness and impoverished background). This case falls far short of the allegations of unprofessional errors in *Cade, Chandler*, and *Williamson.*

At the federal evidentiary hearing, this Court heard from the petitioner's mitigating evidence experts Susan La Fehr Hes-

sion and Dr. Faye Sultan. Ms. Hession testified that back in 1988 when she spoke to trial counsel, she did not know about the petitioner's alleged suffering from sex abuse. Dr. Sultan, a well known anti-death penalty witness, spoke about the petitioner's drug abuse, sex. abuse, suicide attempts and incredibly concluded, unequivocally, that based on the petitioner's handwriting the petitioner suffered from organic brain syndrome. In opposition at the federal habeas hearing, the State called Dr. Hyman Eisenstein, who testified that, although the petitioner had poor language and vocabulary skills, he tested normal for abstract reasoning and cognitive skills.

This Court finds that counsel's strategy not to call these witnesses, one of whom would have given rather damaging testimony, met the prevailing norms of adequate representation. Thus under *Strickland*, it is the determination of this Court that counsel did not render ineffective assistance by electing not to call those witnesses at the penalty phase.

### Conclusion

This Court holds that experienced trial counsel, who represented the petitioner at both trials, did not render constitutionally ineffective assistance of counsel. This Court concludes, consistent with the dictate in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), through an objective test, that the state courts' factual findings were reasonable. In addition, independent of such deference to the state court's factual findings, this Court concludes that Judge Nelson Bailey's actions as trial counsel at both the guilt and penalty phase were within the "wide range of reasonable professional as-

---

**2.** At the federal evidentiary hearing various relatives testified that the Haliburton family included 17 to 23 siblings.

sistance." *Rogers v. Zant,* 13 F.3d 384, 386 (11th Cir.1994). Counsel did not err, but even if he had performed poorly, as now suggested by the petitioner, there is no reasonable probability that either the verdict or the sentence would have been different.

WHEREFORE, for the reasons stated here and in Judge Hurley's Order, the petition is DENIED, but a Certificate of Appealability is GRANTED as to these two claims—the *Brady* violation and ineffective assistance of counsel.